SHEPPARD, APPELLEE, *v.* MACK, APPELLANT.

(No. 39693—Decided February 28, 1980.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Blas E. Serrano, Jr.,* for appellee.

*Mr. David B. Dawson,* for appellant.

KRENZLER, J.  On May 8, 1978, plaintiff-appellee filed a complaint against defendant-appellant in the Juvenile Court of Cuyahoga County. Appellee alleged that she was an unmarried woman resident of Cuyahoga County and that on December 18, 1977, she gave birth to a child and that appellant was the father of said child.

On May 31, 1978, appellant appeared before a referee of the Juvenile Court for preliminary examination without counsel. Appellant entered a plea of guilty to being the father of the child. Appellant was adjudged by the referee to be the reputed father of the child. Appellant was ordered to pay, through the court, $5 per week on maternity expenses of $748 to the County Welfare Department. Appellant was also required to pay, through the court, $20 per week as support money to the County Welfare Department as trustee. Appellant was required to pay court costs of $11.10. Appellant's first payment was to be due when he obtained employment. Appellant was required to report to the Child Support Department, on a weekly basis, his efforts to obtain employment.

On June 14, 1978, appellant, through his newly-obtained counsel, filed objections to the report of the referee. He asserted, *inter alia,* that his plea of guilty was made without representation by counsel or the meaningful opportunity to obtain counsel and, therefore, was not knowingly and intelligently made; that the referee failed to fully and adequately inform appellant of his right to obtain counsel and failed to give appellant a meaningful opportunity to obtain counsel and, therefore, appellant was denied his right to counsel; and that appellant did not knowingly and intelligently waive his right to counsel in this matter and, therefore, his plea of guilty was not done knowingly and intelligently.

The Juvenile Court judge approved the referee's report and overruled the objections to the report. Appellant appeals from the decision of the referee, as approved by the court.

There is no verbatim transcript of the proceedings below. A narrative statement, approved by the trial court on September 18, 1978, and signed by the parties' attorneys, has been included in the record. This narrative statement indicates that the facts are as follows:

"Complainant [appellee] brought this paternity action pursuant to O.R.C. 3111.01 on May 8, 1978 alleging that defendant [appellant] was the natural father of * * * [the child], born December 18, 1977. Defendant was served with a summons and complaint and appeared without counsel before Referee George McCready on May 31, 1978 at 9:30 A.M. for a Preliminary Hearing.

"At the Preliminary Hearing, the Referee read the Complaint and questioned the defendant whether he had read and understood the notice pertaining to his right of representation by counsel attached to the summons and complaint. The summons and complaint were served by residence service on May 22, 1978. The Referee asked the defendant if he had an attorney, and the defendant informed him that he could not afford an attorney. The Referee informed the defendant that he could have obtained an attorney from the Legal Aid Society.

"The Referee informed the defendant of his right to plead not guilty and gave the defendant the opportunity to post bond, if a plea of not guilty was entered. The Referee advised the defendant of his right to a trial by jury or by the court. The Referee gave the defendant the opportunity to question the

complainant. There followed a discussion and questions of the parties by the Referee. The defendant then pled guilty. The Referee adjudged the defendant to be the reputed father of ***[the child] and entered a support order and an order to pay maternity expenses with past care being waived. The Referee prepared his Report and it was submitted to the defendant for his signature. The defendant refused to sign the Report and was informed that he could file Objections to the Report within fourteen (14) days. The defendant obtained representation from the Legal Aid Society and Objections were filed requesting the Court to vacate his plea of guilty. The Objections were overruled by Judge Gagliardo on June 21, 1978. The Report of the Referee was journalized on May 31, 1978, the date of the hearing.

"On June 30, 1978, defendant filed a Notice of Appeal."

Appellant asserts four assignments of error[1] for our consideration. They are as follows:

"I. Acceptance of appellant's guilty plea without informing him of his right to counsel and affording him a reasonable opportunity to obtain counsel denied him due process of law.

"II. The trial court erred in accepting appellant's plea of guilty because the court knew, or should have known from the surrounding circumstances, that the plea was not knowing, intelligent or voluntary within the meaning of the Due Process Clause.

---

[1] In his reply brief, appellant has asserted two other assignments of error. They are as follows:

1. "If O.R.C. §3111.08 allows an indigent paternity defendant to remain at liberty without posting bond, the trial court referee erred by not determining whether appellant was indigent or refused or neglected to post bond."

2. "Due process requires that the Juvenile Court conduct a hearing concerning a defendant's indigency or neglect or refusal to post an appearance bond pursuant to O.R.C. §3111.08."

These assignments of error are improperly raised by way of reply brief. App. R. 16(C) provides as follows:

"The appellant may file a brief in reply to the brief of the appellee, and if the appellee has cross-appealed, the appellee may file a brief in reply to the response of the appellant to the assignments of errors presented by the cross-appeal. No further briefs may be filed except with leave of court."

App. R. 16(A)(2) provides that assignments of error presented for review shall be in the brief-in-chief of the appellant. The reply brief is, then, merely an opportunity to reply to the brief of the appellee. New assignments of error (*i.e.*, those contained in a "further brief") may not be raised except with leave of court. Therefore, these extra assignments of error are not appropriately before the court and will not be considered.

"III. The trial court's failure to appoint counsel for appellant denied him equal protection of the laws.

"IV. The trial court committed prejudicial error in adjudging appellant guilty without careful and independent consideration of the report of referee following an adequate opportunity for appellant to file his objections."

Appellant's assignments of error all center around the issue of whether an indigent defendant is entitled to court-appointed counsel in a paternity proceeding (formerly designated as bastardy proceedings). To answer this critical question, we must evaluate the essential nature of the paternity proceeding and how the nature of this proceeding relates to the purpose of appointing counsel for indigents in criminal cases. Appellant essentially argues that because a paternity proceeding is a "quasi-criminal proceeding," the reasoning that has motivated courts to appoint counsel for indigents in criminal cases should be equally applicable here.

Historically, there has been much uncertainty about the essential nature of a paternity proceeding and whether it is a criminal proceeding or a civil proceeding. In the case of *State, ex rel. Gill,* v. *Volz* (1951), 156 Ohio St. 60, the Ohio Supreme Court stated as follows at paragraph 2 of the syllabus:

"Although the General Assembly has, in the enactment of the General Code of Ohio, classified bastardy proceedings as 'quasi-criminal proceedings,' and although a bastardy proceeding possesses some of the characteristics of a criminal prosecution, the applicable statutes do not contemplate the punishment of a criminal act but only the enforcement of a moral duty of reimbursing the complainant for expense of and maintaining the child, and the civil nature of such a proceeding is such that a verdict of guilty against the putative father may be rendered upon the concurrence of three-fourths or more of the members of the jury."

In *State, ex rel. Gill,* v. *Volz, supra,* the Ohio Supreme Court compared the elements of a civil action with those of the paternity proceeding of that era:

"The procedure in a civil action contemplates the filing of a petition upon which a summons is issued and service made upon the defendant; pleadings filed by the parties to develop the controverted issues; a hearing before a court or jury; a preponderance of the evidence as sufficient to support the

cause of action; a finding by the court or a verdict rendered by a jury; judgment on the finding or verdict; execution upon the judgment; that the judgment debtor cannot be imprisoned for failure to satisfy the judgment of the court; that a failure to obey an order of the court may be made the subject of a contempt proceeding followed by imprisonment as a punishment for the refusal to obey the order; that the defendant may be compelled to testify at the instance of the plaintiff; and that a verdict may be rendered on concurrence of three-fourths or more of the members of the jury.

"On the other hand, a bastardy proceeding involves the following:

"A complaint may be filed by an unmarried pregnant woman and a warrant issued for the accused, who may be arrested and committed to jail in the absence of a recognizance for his appearance at the trial. The accused's sureties may surrender him to the court and be released from the recognizance in which event the accused is returned to jail unless a new recognizance is given. If the accused fails to appear in court his recognizance may be forfeited and the amount of the forfeiture applied to the payment of the judgment. The issue whether the accused is the putative father of the child of the complainant is tried to a jury and the preliminary examination is given in evidence by complainant. A preponderance of the evidence is sufficient to support a judgment of filiation. The accused may testify, but whether he shall be required to testify in the case is a matter of conflict in the decisions of the Courts of Appeals. A verdict of guilty or not guilty is rendered by the jury, and if [the] accused is found guilty by the jury the court shall adjudge him to be the reputed father of the bastard child, if living, and shall order him to pay the complainant such sum of money as the court may find to be necessary for her support, maintenance and necessary expenses caused by the pregnancy and childbirth, together with costs of prosecution, and a reasonable weekly sum for the support and maintenance of the child up to 18 years of age. If the accused fails to pay or give security for the payment of the judgment, he shall be committed to jail until he complies with the order of the court, not as upon contempt of court, but to enforce the satisfaction of the judgment. The judgment of filiation shall not be a bar to his prosecution for the offense of failure to support his illegitimate

child. Sections 12110 to 12123, inclusive, General Code." *Id.,* at 64-65.

The Ohio Supreme Court also stated the following:

*"The view that, although bastardy proceedings possess the attributes of both civil and criminal proceedings, they are in purpose and effect essentially civil is based on a fair balance of the characteristics and the fact that bastardy proceedings have more civil than criminal attributes.* Among these important characteristics are the facts that the courts agree that a preponderance of the evidence is sufficient to support a judgment of filiation rather than proof beyond a reasonable doubt; and that the accused can not plead double jeopardy in case of a reversal of a judgment against him for error.

"* * *

*"This court, in view of the historical background of the legislation relating to this matter and in view of what appears to be the long settled practice of the inferior courts of this state, is constrained to hold that a bastardy proceeding is essentially a civil action and that the trial court committed no error in the instant case in accepting the verdict of guilty concurred in by nine members of the jury."* (Emphasis added.) *Id.,* at 72-73.

In the case of *State, ex rel. Wise,* v. *Chand* (1970), 21 Ohio St. 2d 113, the Ohio Supreme Court held as follows at paragraphs 1 and 2 of the syllabus:

"Prosecutions of complaints under Sections 3111.01 to 3111.24, inclusive, Revised Code, relating to bastardy, are, unless specified otherwise therein, governed by the procedure provided for the trial of civil cases. (Paragraph one of the syllabus of *Taylor* v. *Scott,* 168 Ohio St. 391, followed.)

"The complainant in a bastardy action may, pursuant to the provisions of Section 2317.07, Revised Code, call the defendant as if under cross-examination."

Further, a jury of eight people is permitted in a paternity proceeding, as in most civil proceedings. Civ. R. 38(B); Rule 13(A) of the Rules of the Court of Common Pleas of Cuyahoga County, Juvenile Division. In felony cases, a jury of twelve is required. Crim. R. 23(B).

Despite the strong indications in the preceding authorities we have cited that the paternity proceeding was a civil proceeding, there were a number of elements in the proceeding that appeared to give it a "criminal" quality. R. C. 3111.01

provides that the unmarried woman in a paternity proceeding may file a complaint in writing against the accused. Upon the filing of the complaint, the judge of the Juvenile Court shall issue a warrant for the arrest of the accused person to bring him to the court to answer the complaint. While the woman could, and often did, have her own counsel, the county prosecutor would represent some complainants who were welfare recipients pursuant to agreements between the county welfare department and the county prosecutor's office. Finally, R. C. Chapter 3111 provides for the commitment to jail of the accused for the neglect or refusal to provide bail for his appearance at trial, R. C. 3111.08, or for the neglect or refusal to provide security for the payment of support, maintenance, and necessary expenses of the complainant caused by the pregnancy and childbirth upon the adjudication of the accused's paternity, R. C. 3111.17 and 3111.18.

But this court eliminated the threat of incarceration for indigent fathers under R. C. 3111.17 and 3111.18 in the case of *Walker* v. *Stokes* (1977), 54 Ohio App. 2d 119, known popularly as *"Walker* v. *Stokes II,"* where we held as follows:

"* * * [A]nd we hold that provisions of R. C. 3111.17 and 3111.18 are unconstitutional as a denial of equal protection insofar as they allow for the imprisonment of indigent reputed fathers solely because they are unable to pay the support and maintenance adjudged as necessary by the court." *Id.,* at 126.

This same reasoning must be applicable to R. C. 3111.08 which provides for the imprisonment of the accused for failure to provide sufficient security to assure his appearance to answer the accusation.

Therefore, under the paternity statutes, there is no chance of incarceration for indigent accused fathers on the basis of inability to pay.

With the threat of incarceration for indigency gone, there is very little in the paternity proceeding that resembles a criminal action today. The prosecutor's involvement in the proceeding merely reflects a contractual relationship between his office and the welfare department. The county prosecutor often represents other county agencies in civil disputes. The involvement of the county prosecutor cannot transform a civil case into a criminal proceeding (with all of the attendant

criminal procedural rules being made applicable).[2] Unlike a criminal case, no indictment is issued by the grand jury to begin the proceedings against the accused. While R. C. 3111.01 states that the judge is to issue an arrest warrant for the accused upon the complainant's filing the complaint, the instant case indicates that this "criminal-appearing" procedure is tempered in practice. Here, appellant appeared after being served with a summons and complaint. This is very similar to a civil case where a defendant must answer after receiving the complaint within a certain time period.

Given the strong authority we have cited and the predominant nature of these proceedings, we are justified in concluding that paternity proceedings are civil proceedings.

Therefore, we hold that a paternity proceeding conducted pursuant to R. C. Chapter 3111 is a civil proceeding whose purpose is not to find and punish a criminal adversary of the state, but to determine two issues. First, who is the father of this illegitimate child? Second, if the accused is found to be the father of this child, what shall be the reasonable support obligation that he shall be required to undertake to assure that neither the child nor the mother become obligations of society?

With the above statements in mind, we now turn to the issue of whether an indigent accused in a paternity proceeding is entitled to a court-appointed attorney. In the case of *In re Gault* (1967), 387 U. S. 1, the United States Supreme Court held as follows:

"We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitment to an institution in which the juvenile's freedom is curtailed,* the

---

[2] The extent of state involvement in a paternity proceeding is not at all comparable to the situation in a proceeding to force the permanent, involuntary termination of parental rights described in *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6. There, the Hancock County Children's Services Board, an agency of the state, filed a complaint against parents to take custody of their child. The full force of the state was concentrated against the parents to take their child away. In a carefully limited holding, the Ohio Supreme Court held as follows at paragraph 2 of the syllabus:

"In actions instituted by the state to force the permanent, involuntary termination of parental rights, the United States and Ohio Constitutions' guarantees of due process and equal protection of the law require that indigent parents be provided with counsel and a transcript at public expense for appeals as of right."

In a paternity proceeding, there is no such similar concentration of state power to deprive the defendant of any right.

child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." (Emphasis added.) *Id.,* at 41.

In *Argersinger* v. *Hamlin* (1972), 407 U. S. 25, the United States Supreme Court held as follows:

"We hold, therefore, that absent a knowing and intelligent waiver, *no person may be imprisoned for any offense,* whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." (Footnote omitted and emphasis added.) *Id.,* at 37.

"*Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel.* He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts." (Emphasis added.) *Id.,* at 40.

Finally, in the case of *In re Fisher* (1974), 39 Ohio St. 2d 71, the Ohio Supreme Court stated as follows:

"Because of the *scope and gravity of the constitutional rights involved and the serious deprivations of liberty resulting from involuntary civil commitment* pursuant to R. C. 5122.15, we hold that the due-process clause of the Fourteenth Amendment to the United States Constitution requires that *individuals subject to involuntary civil commitment proceedings be advised of their right to be represented by counsel retained by them, or, if they are unable to afford counsel, that counsel will be appointed for them.* The right to be represented by counsel must be made available at the earliest stage of the proceedings commensurate with the individual's need for a timely preparation of a defense or advancement of an argument for alternative modes of treatment, preferably upon the filing of an affidavit under R. C. 5122.11 in Probate Court." (Emphasis added.) *Id.,* at 82. See R. C. 5122.141 and 5122.15.

The reasoning of the above cases indicates that court-appointed counsel is available for indigents as a matter of right when there is the possibility of a serious deprivation of liberty. In a paternity proceeding, there is no possibility of incarceration, and thus, no possibility of a serious deprivation of liberty. That the putative father may be later subject to contempt pro-

ceedings for failure to comply with a court support order or the criminal provisions of R. C. 2919.21 for failure to provide support to his child does not mean that there are substantial deprivations of liberty in the paternity proceeding itself to justify court-appointed counsel. *Any* father who fails to obey a support order in a divorce proceeding may be cited for contempt. *State* v. *Oppenheimer* (1975), 46 Ohio App. 2d 241. No one would seriously contend that the divorce proceeding under such circumstances is transformed into a criminal proceeding with court-appointed counsel for indigents. Both rich and poor fathers who fail to comply with the court order could be cited for contempt. As for the possible later criminal prosecution under R. C. 2919.21, the rule of *Argersinger, supra,* would be applicable to this later criminal proceeding insofar as incarceration is a possible punishment. An indigent would be entitled to court-appointed counsel at this later criminal proceeding. That proceeding, however, is separate from the paternity proceeding, a civil proceeding, and does not justify the appointment of counsel for the paternity proceeding. Therefore, we conclude that there is no right to court-appointed counsel in a paternity proceeding.

Now, we shall examine appellant's assignments of error.

Appellant first asserts that the referee's acceptance of his guilty plea without informing him of his right to court-appointed counsel and affording him a reasonable opportunity to obtain free counsel denied him due process of law. We have already demonstrated that appellant had no right to court-appointed counsel in the instant proceeding. In the "Preliminary Hearing Procedural Information" form provided to appellant with the summons, there is a notice that appellant "may be represented at Court by an attorney or you may come alone." Appellant was provided ample notice to secure an attorney when this notice was served upon him along with the summons and complaint by residence service on May 22, 1978, nine days before the hearing.[3] Since appellant had no right to court-

---

[3] There is nothing in the narrative statement, prepared pursuant to App. R. 9 (C), signed by the parties' attorneys and the trial court, to indicate that appellant did not have timely notice of the hearing. In the absence of a verbatim transcript here, we must look to the narrative statement included in the record to determine what occurred at the preliminary hearing and what the referee was informed of by appellant. Appellant's self-serving statements (asserting that he did not arrive home from college until May 30, 1978) attached to the objections filed to the referee's report made subse-

appointed counsel here, the referee did not err in failing to inform him of a nonexistent right. This first assignment of error is not well taken.

Appellant next asserts that the court erred in accepting appellant's plea of guilty because the court knew, or should have known, from the surrounding circumstances that the plea was not knowing, intelligent and voluntary within the meaning of the Due Process Clause. In a criminal proceeding, Crim. R. 11 provides the approved procedure for the acceptance of guilty pleas to assure that they are knowing, intelligent, and voluntary. But, a paternity proceeding is a civil proceeding. Therefore, Crim. R. 11 would not be applicable. A party in a civil proceeding may make admissions without any showing that such admissions are knowingly, intelligently, and voluntarily made. In this case, a guilty plea is akin to an admission by a party. Assuming, however, that something more must be shown of knowledge, intelligence, and voluntariness beyond an ordinary party admission, these elements were present in the instant case. Here, the narrative statement indicates that appellant was advised of his right to plead not guilty. Appellant was given the opportunity to post bond if he so pled. Appellant was advised of his right to trial by jury or by the court. Appellant was given the opportunity to question the complainant. Under such circumstances, appellant's plea of guilty cannot be considered unintelligent, unknowing, and involuntary. Appellant had other options which were explained to him. Under such circumstances, his plea must be deemed good.

As for appellant's alleged lack of understanding of the consequences of so pleading, it is an elementary fact of common understanding that a father must support his child. Appellant cannot seriously argue that he thought that he could admit paternity without any responsibilities attaching as a result. The narrative statement does not contain one iota of evidence to indicate that appellant was coerced or threatened to plead guilty. Since appellant had no right to court-appointed counsel, there is no need to show that he waived this prior to pleading. Appellant was properly summoned and received

quent to the preliminary hearing are not reflected in the final narrative statement signed by the parties' attorneys and the trial court which was filed on September 18, 1978.

notice of the proceedings. He had notice and the opportunity to be heard. There is nothing to indicate that appellant has been deprived of life, liberty or property without due process of law. *Fuentes* v. *Shevin* (1972), 407 U. S. 67; *Mitchell* v. *W. T. Grant Co.* (1974), 416 U. S. 600; *Sniadach* v. *Family Finance Corp. of Bay View* (1969), 395 U. S. 337. The second assignment of error is not well taken.

Appellant asserts that the trial court's failure to appoint counsel for him denied him equal protection of the law. Appellant argues that two classes of paternity defendants are created by denying court-appointed counsel: those who can afford counsel and those who cannot afford counsel. This is correct and characterizes the situation in many civil proceedings generally. There is nothing inherently unconstitutional about self-represented litigants in a civil proceeding. Not everyone can afford counsel in divorce proceedings, for instance. Appellant further argues that lack of appointed counsel for indigent accused fathers creates two classes of litigants in these proceedings in that the indigent complainants often have counsel provided by the prosecutor's office. Indeed, it is often the case in American civil proceedings that one side may be represented by an attorney and the other may not be able to afford counsel. Given that this is a civil proceeding, there is nothing inherently unconstitutional about such an arrangement. The Legal Aid Society is available to indigents. The referee, of course, had no duty to provide notice of a right to appointed counsel since there was no such right. This assignment of error is not well taken.

Appellant's final assignment of error asserts that the "trial court committed prejudicial error in adjudging appellant guilty without careful and independent consideration of the report of [the] referee following an adequate opportunity for appellant to file his objections." Appellant asserts that the court erred to his prejudice by entering judgment on the day of the hearing without first considering appellant's objections.

Civ. R. 53 provides, in relevant part, as follows:

"(E)(1) The referee shall prepare a report upon the matters submitted to him by the order of reference. He shall file the report with the clerk of the court and shall mail a copy to the parties. In an action on the merits of an issue to be tried

without a jury, he shall file with his report a transcript of the proceedings and of the evidence only if the court so directs.

"(2) A party may, within fourteen days of the filing of the report, serve and file written objections to the referee's report. Such objections shall be considered a motion. Objections shall be specific and state with particularity the grounds therefor. Upon consideration of the objections the court may: adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself.

"* * *

"(5) The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court."

In *Eisenberg* v. *Peyton* (1978), 56 Ohio App. 2d 144, this court stated as follows:

"The failure to comply with Civil Rule 53 constitutes grounds upon which the appellate court may reverse the judgment of the trial court. *As with any other procedural deficiency, upon a showing that the assigned error has merit and that it worked to the prejudice of the appellant, the judgment of the lower court will be set aside.* Thus, all judgments of the trial court are potentially voidable. This potentiality, however, does not alone impair the validity of the judgment.

"The mere raising as an assignment of error the trial court's failure to comply with Civil Rule 53, as in the case of any other assigned error, does not automatically affect the validity of the Court's judgment.* * *" (Emphasis added.) *Id.*, at 151.

In the instant case, the transcript of docket entries included in the record indicates that the court did indeed approve the referee's report on May 31, 1978. Further, the time stamp on the referee's report indicates that it was filed on May 31, 1978. This would apparently indicate that the court adopted the referee's report hastily. Nevertheless, the record also contains objections filed by appellant on June 14, 1978, within fourteen days of the filing of the referee's report. According to the narrative statement, the court overruled these objections on June 21, 1978. The objections overruled by the court were as follows:

"1. Defendant's plea of guilty to the complaint was made without representation by counsel or the meaningful opportunity to obtain counsel and, therefore, was not knowingly and intelligently made.

"2. The referee failed to fully and adequately inform the defendant of his right to obtain counsel and failed to give defendant a meaningful opportunity to obtain counsel. Therefore, defendant was denied his right to counsel.

"3. The defendant did not knowingly and intelligently waive his right to counsel in this matter and therefore, his plea of guilty was not done knowingly and intelligently.

"WHEREFORE, defendant requests this Honorable Court to vacate his plea, strike the report of the Referee and set this case for a preliminary hearing."

Review of the above objections indicates that they are, in substance, the same assignments of error that appellant has raised on appeal. As we have indicated, these assignments of error are not well taken. Therefore, the judge's consideration of these objections after approving the referee's report and his overruling of them then did not work to the prejudice of the appellant. This assignment of error is not well taken.

In conclusion, we hold that an indigent paternity defendant is not entitled to court-appointed counsel because these are civil proceedings. Appellant's assignments of error are not well taken. For all of the reasons noted above, the judgment of the court below must be affirmed.

*Judgment affirmed.*

PARRINO, C. J., and KRUPANSKY, J., concur.