OPINION.
{¶ 1} Defendant, Steve Watson, appeals from a summary judgment in favor of Plaintiff, Tipp City, on its claim to quiet title, and from judgments against Watson on his claims against Tipp City and The State of Ohio.
 {¶ 2} The underlying action, while both procedurally and historically complex, arises from a relatively straight-forward set of facts.
 {¶ 3} Watson owns and operates a business in Tipp City called the Tipp Roller Mill. It is situated adjacent to a parcel of former canal land called the Tippicanoe Canal Lock. Watson also owns a canal boat situated on the canal land.
 {¶ 4} The canal land is one of a number of such unused former canal properties owned by the State of Ohio. The State had leased the property to a succession of lessees. On March 7, 1988, Watson acquired the interests of the prior lessor. The written lease contained a provision allowing the Director of Administrative Services of the State of Ohio to convey the land to a political subdivision upon its application to acquire and use the land for recreational purposes.
 {¶ 5} When Watson acquired his lease, R.C. 123.681(A) mandated the director of the Department of Administrative Services to offer canal land for sale to a lessee who owned and/or improved it "upon application by such persons . . . at not less than the appraised value thereof and they shall be permitted to purchase the same within one year." That section was repealed effective July 1, 1989, when R.C. 1520.01, et seq. was enacted into law and immediately became effective.[1] Those new sections transferred authority to sell canal lands to the director of the Department of Natural Resources on terms that the director determines.
 {¶ 6} While R.C. 123.681(A) was yet in effect, Watson sent a written application to purchase the canal land to the director of the Department of Administrative Services on May 15, 1989. Watson alleges that in conversations representatives of the Department had assured him that his application gave him a "right of first refusal." However, and notwithstanding Watson's application, the State's representatives never offered Watson an opportunity to purchase the canal land. Instead, on February 25, 1999, the State's representatives agreed to sell the canal land to Tipp City, which subsequently acquired title to the land in May of 1999 by Governor's Deed.
 {¶ 7} Tipp City commenced the underlying action against Watson on July 14, 2000, as an action to quiet title. Watson filed an answer and counterclaim, in which he alleged that he holds title to the land and that Tipp City is a trespasser. Watson filed an amended answer and counterclaim on November 5, 2001. In it, Watson joined the State of Ohio as a party and asked the court to order the State to convey title to him as well as to find that Tipp City has no valid interest.
 {¶ 8} Tipp City moved for summary judgment on Watson's claims. The trial court granted the motion. The court subsequently heard Watson's remaining claims by trial to the court, and thereafter it dismissed them. Watson filed a timely notice of appeal.
 FIRST ASSIGNMENT OF ERROR {¶ 9} "The trial court erred in ruling that only equitable issues were left for resolution at trial and concluding Watson had no right to trial by jury."
 SECOND ASSIGNMENT OF ERROR {¶ 10} "The trial court erred in ruling that Watson had the status solely as prospective purchaser, the same as the city."
 THIRD ASSIGNMENT OF ERROR {¶ 11} "The trial court erred in ruling as a matter of law that there was no evidence that Watson relied upon any representation made by a person with authority."
 {¶ 12} Watson's assignments of error present two basic contentions. First, that the trial court erred when it granted summary judgment to Tipp City and against Watson on Tipp City's quiet title claim. Second, that the court deprived Watson of his right to trial by jury on his claims against Tipp City and the State. We will consider those matters in reverse order.
 {¶ 13} Civ.R. 38(A) guarantees a litigant's right to trial by jury. Civ.R. 38(A) states, in pertinent part:
 {¶ 14} "Any party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefor at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue. Such demand shall be in writing and may be indorsed upon a pleading of the party. If the demand is endorsed upon a pleading the caption of the pleading shall state `jury demand endorsed hereon.'"
 {¶ 15} Neither the answer and counterclaim that he filed on September 19, 2000, nor the amended answer, counterclaim, and third party complaint that Watson filed on November 5, 2001, contains a jury demand in the form that Civ.R. 38(B) requires. Watson did file a demand in the form of a separate motion on September 18, 2000. The State filed a motion and memorandum contra on July 12, 2002. The court granted the State's motion, pursuant to Civ.R. 39(A), finding that the issues presented are equitable, to which no right to trial by jury attaches.
 {¶ 16} The right to trial by jury is guaranteed by Article I, Section 5 of the Ohio Constitution. The endorsement that Civ.R. 38(B) requires is intended to insure that the right will not be overlooked. Even if it is, "[m]ost courts hold that, at least if no prejudice befalls the opposing party, failure to include the requisite phraseology in the caption makes the demand technically deficient but does not operate as a waiver of jury trial if the demand is otherwise timely and proper." Baldwin's Ohio Civil Practice, Section AT 38-24.
 {¶ 17} Where a plaintiff in its complaint and/or a defendant by way of a counterclaim seeks primarily equitable relief, with or without money damages, neither party is entitled to a trial by jury. Pyromatics,Inc. v. Petruziello (1983), 7 Ohio App.3d 131. Whether an action is equitable or legal, and therefore triable by a jury, is determined by the issues presented and the relief sought. Taylor v. Brown (1915),92 Ohio St. 287.
 {¶ 18} Watson argues that the action that Tipp City commenced, though it was captioned an action to quiet title, which is equitable, was instead an action in law for recovery of real property on which he was entitled to a jury's determination. Even if that is so, and we are not convinced that it is, the trial court's summary judgment for Tipp City on its quiet title claim avoids a jury issue altogether. For the reasons stated below, we conclude that summary judgment was proper. We also agree with the trial court that the remaining issues presented by Watson in his answer and counterclaim were mere grounds for the equitable relief Watson sought and therefore were triable to the court.
 {¶ 19} Watson argues that the written application he filed with the Department of Administrative Services on May 15, 1989, and the mandate then imposed by R.C. 123.681(A) on the director of the Department to offer to sell him the land, created an equitable right for his benefit that is enforceable, notwithstanding the subsequent repeal of R.C.123.681(A). In that same vein, Watson argues that the assurances he received from representatives of the Department that he had a "right of first refusal" because he had applied to purchase the land created a form of promissory estoppel that prevented the State from selling the land to Tipp City.
 {¶ 20} Promissory estoppel requires a showing that a person to whom a promise was made then relied on that promise to his detriment by changing a course of conduct he would otherwise have followed to serve or protect his interests. It is unclear in this instance how Watson might have changed the course of conduct he followed.
 {¶ 21} Watson had no right to force the State to sell him the canal land. At most, R.C. 123.681(A) required the State to offer to sell Watson the land at no less than its appraised value after Watson made his application to purchase it. Had the State then not made an offer at all, Watson might have sought relief by way of a writ of mandamus against the director of the Department of Administrative Services, the official charged by R.C. 123.681(A) with the duty to make the offer. That duty was expunged by the repeal of R.C. 123.681 and enactment of R.C. 1520.01, et seq., which was both enacted into law and became effective on July 1, 1989, one and one half months after Watson had applied to purchase the land. Thereafter, the responsibility to manage and sell canal lands was conferred by the new law on the director of the Department of Natural Resources, "exclusively." R.C. 1520.02(A). Further, the new law imposes no duty on that official to offer to sell the land to persons such as Watson on their application, as former R.C. 123.681(A) did.
 {¶ 22} Watson could not have known that R.C. 123.681 would be repealed on July 1, 1989 when he made application to purchase the canal land property on May 15, 1989. The State officials who told him he had a right of first refusal were probably likewise unaware of the change. The question presented, however, is whether the repeal of R.C. 123.681 after Watson had applied pursuant to that section to purchase the land deprived Watson of any right in law he then had for which he is entitled to equitable relief.
 {¶ 23} We do not agree that R.C. 123.681(A) operated to confer any form of right on Watson because of his application. Watson incurred no loss or detriment when he applied to purchase the land, unlike a purchaser who gains a right through "equitable conversion" when he signs a contract to purchase land and pays earnest money. Watson's rights, at least those that R.C. 123.681(A) conferred on him, were wholly inchoate; they were no more than an expectation, one dependant on an offer of sale by the State that never materialized. Absent that offer, and Watson's acceptance of it, he gained no rights subject to enforcement.
 {¶ 24} Watson also argues that the change in law amounts to retroactive or retrospective legislation prohibited by Article II, Section 28 of the Ohio Constitution. A retroactive or retrospective statute is one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. Bielat v. Bielat (2000), 87 Ohio St.3d 350. Retroactive or retrospective legislation is substantive law which changes accrued rights. An accrued right is one arising from a past transaction that created at least a reasonable expectation of finality. Van Fossen v.Bobcock Wilcox Co. (1988), 36 Ohio St.3d 100.
 {¶ 25} R.C. 123.681 required the State to offer to sell the canal land to Watson "at not less than the appraised value thereof" upon his application to purchase it. The director of the Department of Administrative Services could, in his discretion, ask a higher price. Because no price had been set by an offer, Watson's application conferred no right on him that created a reasonable expectation of finality. Therefore, the repeal of R.C. 123.681 and adoption of R.C. 1520.01, et. seq. is not, with respect to the "right" that Watson asserts, prohibited retroactive or retrospective legislation.
 {¶ 26} Watson's claims against the State and the relief he requested, to require the State to convey the land to him after its sale to Tipp City is set aside, is equitable in nature, and an order granting that relief would supersede a statutory mandate from the legislature when it enacted R.C. 1520.01, et seq., governing how the sale of canal lands must take place. We have held that granting such relief would amount to a judicial usurpation of the legislative power that is "anathema to any rational concept of democratic government." State v. First, Inc. (April 3, 1990), Montgomery App. No. 11486, at p. 9. Therefore, the trial court properly rejected Watson's request.
 {¶ 27} We also reject Watson's claim that Tipp City's quiet title action should have been dismissed or the relief it requested denied because Tipp City lacks "clean hands." Tipp City merely acted on its right in law to purchase the land. We cannot find that it lacks clean hands as a result. Indeed, the provision in Watson's lease with the State which allowed the State to convey the land to a political subdivision for recreational use instead of to Watson undermines whatever injury he claims to have suffered as a result of Tipp City's conduct, as well as whatever prior "right" R.C. 123.681(A) may have conferred on Watson that he might enforce.
 {¶ 28} Watson raises a number of new issues or grounds in his reply brief that were not raised in his appellant's brief. A party may not raise new assignments of error in a reply brief without leave of court. Sheppard v. Mack (1980), 68 Ohio App.2d 95. Errors not specifically raised in the initial brief may be disregarded. Cassaro v.Cassaro (1976), 50 Ohio App.2d 368. In this instance, and having reviewed Appellant's reply brief, we are confident that the additional matters argued therein would not alter the result we reach.
 {¶ 29} The assignments of error are overruled. The judgment of the trial court will be affirmed.
FAIN, P.J., and BROGAN, J., concur.
[1] H 1989 111.