**BLAIR et al., Appellees,**

v.

**The CINCINNATI INSURANCE COMPANY, Appellants.**

[Cite as *Blair v. Cincinnati Ins. Co.,* 163 Ohio App.3d 81, 2005-Ohio-4323.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 04CA2983.

Decided Aug. 17, 2005.

82

Miller & Rodeheffer and Margaret Apel Miller, for appellees.

Mollica, Gall, Sloan & Sillery Co., L.P.A., and Andrew J. Mollica, for appellant.

HARSHA, Judge.

{¶ 1} The Cincinnati Insurance Company ("CIC") appeals the trial court's entry of summary judgment in favor of Hughie and Wanda Blair and the denial of its own motion for summary judgment. CIC contends that the Blairs are not entitled to underinsured-motorist coverage under either an automobile liability policy issued to the Blairs or a commercial general liability policy issued to a business owned by Mrs. Blair. Because the Blairs were injured while riding a motorcycle that was not listed in the policy, the "other owned auto" exclusion precludes coverage for their injuries. Nor are the Blairs entitled to coverage by operation of law under the commercial general liability policy because it is not a "motor vehicle policy" as statutorily defined. Therefore, CIC was not required to offer uninsured/underinsured-motorist ("UM/UIM") coverage. And although the policy states that CIC will provide such coverage when required by statute, no statute requires it to do so. Accordingly, the trial court erred in granting summary judgment to the Blairs and in denying CIC's motion for summary judgment.

{¶ 2} In August 2001, a negligent driver injured the Blairs while they were riding a motorcycle. Progressive Insurance Company insured the negligent driver and paid its policy limits of $12,500 per person/$25,000 per occurrence. Progressive also insured the Blairs for underinsured-motorist coverage on the motorcycle with limits of $25,000 per person/$50,000 per occurrence. These limits were also exhausted.

{¶ 3} The Blairs had three insurance policies issued by CIC: a homeowners' policy, an automobile liability policy covering three vehicles owned by the Blairs, and a commercial general liability policy insuring the beauty salon Classi Image (a sole proprietorship owned by Mrs. Blair). The Blairs filed a complaint against CIC seeking underinsured-motorist coverage under each of these three policies.

{¶ 4} CIC moved for summary judgment, arguing that the Blairs were not entitled to underinsured-motorist coverage under any of the policies it issued. The Blairs conceded that summary judgment was appropriate as to the homeowners' policy but argued that they were entitled to coverage under the automobile policy and commercial general liability policy. The court granted CIC's motion for summary judgment on the homeowners' policy but denied it on the other two.

{¶ 5} Thereafter, the Blairs moved for summary judgment on the automobile policy and commercial general liability policy. The Blairs also sought summary judgment on the amount of coverage they were entitled to under the commercial general liability policy, claiming that they were entitled to higher limits than the policy stated because CIC had unilaterally reduced the coverage limits without properly notifying Mrs. Blair.

{¶ 6} After the court granted the Blairs' motions, CIC appealed the court's decision, assigning the following errors:

(1) Appellant The Cincinnati Insurance Company asserts that the Trial Court erred in granting summary judgment in favor of Appellees.

(2) Appellant The Cincinnati Insurance Company further asserts that the Trial Court erred in failing to enter summary judgment in its favor.

In its reply brief, CIC supplements its initial brief with the following assignment of error:

(3) In the alternative, if coverage is afforded under The Cincinnati Insurance Company's commercial general liability policy, the Trial Court erred in holding the limits are $300,000 per occurrence.

However, an appellant may not use a reply brief to raise new issues or assignments of error. *Durham v. Pike Cty. Joint Vocational School,* 150 Ohio App.3d 148, 2002-Ohio-6300, 779 N.E.2d 1051, at ¶ 12, citing *Sheppard v. Mack* (1980), 68 Ohio App.2d 95, 22 O.O.3d 104, 427 N.E.2d 522, fn. 1. A reply brief simply provides an opportunity for an appellant to respond to issues raised in the appellee's brief. App.R. 16(C); see *In re Haubeil,* Ross App. No. 01CA2631, 2002-Ohio-4095, 2002 WL 1823001; *Sheppard.* Accordingly, CIC's third assignment of error is not properly before the court, and we will not consider it.

## SUMMARY JUDGMENT STANDARD

{¶ 7} An appellate court independently reviews a trial court's decision to grant summary judgment. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. In doing so, we apply the standard contained in Civ.R. 56. *Horsley v. Essman* (2001), 145 Ohio App.3d 438, 442, 763 N.E.2d 245. Under Civ.R. 56(C), summary judgment is appropriate when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, when viewed most strongly in favor of the nonmoving party, that reasonable minds can come to a conclusion only in favor of the moving party. E.g., *Grafton.*

## INTERPRETATION OF INSURANCE CONTRACTS

{¶ 8} The interpretation of an insurance policy is a question of law that an appellate court reviews de novo, without deference to the trial court. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. In interpreting an insurance policy, a court's role "is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11. In doing so, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." (Citations omitted.) Id.

{¶ 9} However, when provisions in an insurance contract "are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, at syllabus; see, also, *Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 13. This " 'rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.' " Id. at ¶ 14, 797 N.E.2d 1256, quoting *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus.

### Automobile Liability Policy

{¶ 10} CIC contends that the Blairs are not entitled to underinsured-motorist coverage under the automobile liability policy because the UM/UIM endorsement contains an "other owned auto" exclusion. That exclusion exempts coverage for injuries or property damage sustained while operating a motor vehicle that is

owned by a named insured if the motor vehicle is not specifically identified in the policy. Because the Blairs were injured while operating a motorcycle they owned but did not list on the declarations page, CIC contends that they are not entitled to underinsured-motorist coverage.

{¶ 11} The Blairs counter that they are entitled to coverage because the policy is ambiguous and therefore must be construed in their favor. They argue that the policy fails to define "motor vehicle" and that the "other owned auto" exclusion does not require the motor vehicle to be specifically identified as a "covered auto" under the liability policy or by make, model, year, etc. Further, they argue, since the liability policy specifically states that a motorcycle can be a "covered auto," it is reasonable to interpret the contract as a whole to mean that a motorcycle owned, maintained, or used by a covered person is "specifically identified" in the policy for purposes of the exclusion.

{¶ 12} The trial court adopted the Blairs' arguments and determined that the automobile liability policy was ambiguous. The court concluded that it was reasonable to interpret the policy to mean that a motorcycle owned, maintained, or used by a covered person is "specifically identified" as a motor vehicle for which UM/UIM coverage is provided. Because the motorcycle was specifically identified in the liability portion of the contract, the court concluded that the exclusion in the underinsured-motorist coverage was inapplicable and that the Blairs were entitled to coverage.

{¶ 13} R.C. 3937.18 allows insurance companies to exclude UM/UIM coverage for vehicles not listed in the policy. The Blairs do not dispute that CIC could exclude such vehicles; rather, they contend that the automobile policy issued by CIC does not accomplish this objective. Therefore, we examine the plain language of the policy.

{¶ 14} The declaration sheet of the liability policy issued by CIC effective April 30, 2001, to April 30, 2002, lists three "covered autos": a 1997 Honda Accord LX, a 1995 Toyota Camry LE, and a 1992 GMC Sonoma. A 1994 Geo Tracker was apparently added to the policy but deleted before the accident, and the Camry was deleted and a 1996 Toyota Avalon was added. No motorcycles were ever listed as one of the "covered autos."

{¶ 15} The liability coverage in the policy provides:

When a **covered person** becomes legally responsible because of an auto accident or for physical damage to a **non owned auto**, we will pay:

A. for bodily injury;

B. for property damage;

C. for property damage to a non-owned auto;

* * *

"**Covered person**" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto (including a motorhome, truck or motorcycle) or **trailer**.

{¶ 16} The UM/UIM endorsement states:

We will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of:

1. An **uninsured motor vehicle** * * * because of **bodily injury**:

a. Sustained by a covered person; and

b. Caused by an accident.

The policy defines "uninsured motor vehicle" as including "a land motor vehicle or trailer of any type * * * [w]hich is an underinsured motor vehicle."

{¶ 17} The uninsured-motorist endorsement also contains exclusions:

A. We do not provide Uninsured Motorists Coverage for **bodily injury** or **property damage** sustained by any person:

1. While that person is operating or **occupying** a motor vehicle owned by a named insured, a spouse or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided.

{¶ 18} The trial court determined that the CIC automobile policy was ambiguous because it failed to define the term "motor vehicle." We conclude that "motor vehicle" must be given its ordinary meaning because the policy does not specifically define the term. The American Century Dictionary defines "motor vehicle" as a "powered road vehicle, such as a car, truck, etc." Clearly, a motorcycle would fall within this definition. Moreover, the Ohio Supreme Court has interpreted the term "motor vehicle" as used in R.C. 3937.18 to include motorcycles.[1] *Horsely v. United Ohio Ins. Co.* (1991), 58 Ohio St.3d 44, 46, 567 N.E.2d 1004. The CIC policy is not ambiguous simply because it failed to define "motor vehicle." That term must be given its ordinary interpretation, which clearly includes motorcycles.

---

1. {¶ a} 2001 S.B. No. 97, effective October 31, 2001, added a definition of "motor vehicle" to R.C. 3937.18(A):

{¶ b} Unless otherwise defined in the policy or any endorsement to the policy, "motor vehicle," for purposes of the uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages, means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle, and bus.

{¶ c} This statutory provision was not in effect at the time of the Blairs' accident.

{¶ 19} The Blairs do not dispute that they owned the motorcycle they were operating at the time of the accident. Therefore, we must determine whether the motorcycle was "specifically identified" in the automobile policy. We conclude that it was not.

{¶ 20} The trial court found that the policy could be reasonably interpreted as specifically identifying the motorcycle the Blairs were riding simply because it refers to a motorcycle under the definition of "covered person." This interpretation ignores the plain and ordinary meaning of the words used in the policy. The American Century Dictionary defines "specific" as "clearly defined," "particular," or "exact; precise; giving full details." Therefore, a general reference to any motorcycle would not be a specific identification of that motorcycle. Rather, the policy would need to include characteristics such as the year, make, model, and vehicle identification number of the motorcycle for it to be "specifically identified" in the policy. Here, the only motor vehicles specifically identified in the policy are those listed on the declarations page as "covered autos."

{¶ 21} Having reviewed the CIC automobile policy, we conclude that it was not ambiguous. The policy clearly excludes UM/UIM coverage for any motor vehicle owned and operated by a named insured that is not specifically identified in the policy. Because the Blairs were operating a motor vehicle that they owned and that was not specifically identified in the policy, the "other owned auto" exclusion applies and the Blairs are not entitled to UM/UIM coverage. The court erred in denying CIC's motion for summary judgment and granting the Blairs' motion for summary judgment on this issue.

## Commercial General Liability Policy

{¶ 22} CIC also contends that the Blairs are not entitled to UM/UIM coverage under the commercial general liability policy issued to Classi Image, a sole proprietorship owned by Mrs. Blair. The commercial general liability policy includes an endorsement for hired-auto and nonowned auto liability. CIC acknowledges that in *Waters v. George,* Athens App. No. 02CA36, 2003-Ohio-2093, 2003 WL 1949751, we concluded that UM/UIM coverage should have been offered under a commercial general liability policy providing liability coverage for non-owned autos because the policy was a motor-vehicle policy. We held that the coverage existed in that case as a matter of law because the insurer failed to offer UM/UIM coverage, although we ultimately concluded that coverage was unavailable to the plaintiffs, as they were not insureds under the policy.

{¶ 23} CIC contends that *Waters* is distinguishable because it interpreted an earlier version of R.C. 3937.18, which did not specifically define "motor vehicle policy." H.B. No. 261, effective September 30, 1997, amended R.C. 3937.18 to define a "motor vehicle policy" as

Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicle specifically identified in the policy of insurance.

The commercial general liability policy issued to Classi Images was effective from December 15, 1998, through December 15, 2001. Therefore, this statutory definition of "motor vehicle policy" applies. Because the commercial general liability policy issued to Classi Images does not identify any specific motor vehicles, it cannot serve as proof of financial responsibility and does not qualify as a "motor vehicle policy" under R.C. 3937.18. See *Russell v. Heritage Mut. Ins. Co.*, Hamilton App. No. C–030868, 2004-Ohio-5851, 2004 WL 2480704, at ¶ 11 (an insurance policy that does not list any specific automobiles cannot qualify as proof of financial responsibility). Therefore, CIC was not required to offer UM/UIM coverage to Classi Images, and no such coverage exists by operation of law.

{¶ 24} The Blairs also argue that the endorsement itself provides UM/UIM coverage. Specifically, the Blairs rely on section (A)(3) of the endorsement, which states, "We will provide the uninsured/underinsured motorists coverage required by statute." The Blairs contend that the endorsement was actually drafted in 1992 and, at that time, the offering of UM/UIM coverage was statutorily required. Therefore, the endorsement must be interpreted as providing UM/UIM coverage.

{¶ 25} The Ohio Supreme Court has held that the statutory law in effect at the time the parties enter into a contract for insurance controls the rights and duties of the contracting parties for determining the scope of coverage of an underinsured-motorist claim. *Ross v. Farmers Ins. Group of Cos.*, 82 Ohio St.3d 281, 1998-Ohio-381, 695 N.E.2d 732, at syllabus. The commercial general liability policy issued to Classi Images has an effective date of December 15, 1998, well after the legislature added the definition of "motor vehicle policy" to R.C. 3937.18. The date that the endorsement was actually drafted has no relevance.

{¶ 26} Because the commercial general liability policy does not specifically identify any automobiles, it cannot serve as proof of financial responsibility and is not a "motor vehicle policy" as defined in R.C. 3937.18. Thus, CIC was not required to offer UM/UIM insurance to Classi Images, and its failure to do so does not result in coverage by operation of law.

{¶ 27} The provision that CIC "will provide the uninsured/underinsured motorists coverage required by statute" does not require coverage here. This provision can only be interpreted as meaning that UM/UIM coverage will be provided under the Hired Auto and Non–Owned Liability Endorsement only when statutorily required. The Blairs have not cited any statute in effect at the inception of

the policy that requires CIC to provide that coverage here. Therefore, no UM/UIM coverage exists under the endorsement.

{¶ 28} The court erred in granting summary judgment to the Blairs and denying summary judgment to CIC as to the commercial general liability policy.

{¶ 29} Having found merit in both of CIC's assigned errors, we reverse the judgment of the trial court and remand this matter for further action consistent with this opinion.

Judgment reversed
and cause remanded.

ABELE, J., concurs.

McFARLAND, J., dissents.