JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Walter Zimmer appeals from the trial court's denial of his post-sentence "motion" to withdraw a guilty plea he entered in 2001 to a charge of involuntary manslaughter.[1]
 {¶ 2} Zimmer presents four assignments of error. He asserts in them that the trial court abused its discretion in denying his motion without a hearing, because he demonstrated that the state relied on "false evidence" in convicting him in the related case of State v. Zimmer (Oct. 28, 1999), Cuyahoga App. No. 75138 ("Zimmer I ") and never brought this to the attention of the defense, but the trial court failed to consider this claim, and further demonstrated he was "actually innocent" of the crime.
 {¶ 3} Since the record does not support Zimmer's assertion, however, the trial court's decision is affirmed.
 {¶ 4} The underlying facts of this case previously were set forth by this court in Zimmer I. Briefly stated, a jury convicted Zimmer of attempted aggravated murder, felonious assault, kidnapping, aggravated burglary and *Page 4 
aggravated robbery based upon evidence that proved he and two co-defendants, Thomas Siller and Jason Smith, took part in beating and robbing an elderly woman, "Lucy" Zolkowski, inside her home during the early morning hours of June 3, 1997.
 {¶ 5} The evidence in Zimmer I consisted of, inter alia, the discovery of the bloody and insensible victim tied tightly to an armchair in her living room, testimony from the victim's neighbors about her habits and her acquaintances, Zimmer's own statement to the police, the statements two co-defendants provided to the police, and the testimony of Jason Smith. The victim herself remained "unable to talk" and "unresponsive" at the time of Zimmer's trial.
 {¶ 6} According to Zimmer I, although the police "confiscated some of Smith's clothing which had blood stains," Smith obtained a beneficial plea agreement in exchange for testifying against both Zimmer and Siller. Smith testified he "sold crack cocaine to [Zimmer] and Siller almost every day," and he knew those two men sometimes "would go to [the victim's] house where they would borrow money" to pay him. The three of them went to the victim's house that night after he proposed "they could all get high." Smith testified they did this twice, i.e., once at 9:00 p.m. and again at 11:30.
 {¶ 7} Smith also testified that he waited outside both times, but, the second time, since he had been waiting for over forty minutes, he "went into the *Page 5 
house to see what was taking so long." When he saw Siller "rummaging through" the victim's possessions, Smith decided to "take" a "box of blank checks in the rear bedroom." Smith came into the living room, however, and saw Zimmer "hitting" the victim; at that point, Smith abandoned the blank checks and "left."
 {¶ 8} Smith explained the blood on his clothes by testifying that "he broke the glass on the door of his girlfriend's home and cut himself." This explanation was corroborated when "the police testified that a glass window on the door of the girlfriend's home was broken," and "Kay Ann May of the trace evidence department testified that the blood found on Smith's clothing was Smith's blood, not [the victim's]."
 {¶ 9} In presenting his defense, Zimmer sought to discredit Smith's testimony. The jury nevertheless found him guilty of the crimes with which he was charged, and he received a lengthy sentence. This court affirmed his convictions and sentences in Zimmer I.
 {¶ 10} The victim ultimately died from the injuries she sustained on the night of the incident. Therefore, on May 15, 2000, approximately six months after the decision in Zimmer I, Zimmer and Siller were indicted together in the instant case, charged with one count of aggravated murder with a felony murder *Page 6 
specification. Zimmer pleaded not guilty to the indictment, and his case proceeded separately from that of his co-defendant.[2]
 {¶ 11} The record reflects that during the course of the proceedings in this case, defense counsel filed a motion in the trial court entitled "motion to require the State to have the [sic] DNA testing performed onall suspected blood spots or splatters on the clothing of Jason Smith." (Emphasis added.) The record further reflects the trial court granted this motion on October 24, 2001.
 {¶ 12} Eventually, on November 13, 2001, the trial court conducted a plea hearing. The prosecutor informed the court that, although the case was "on the verge of trial" as a "capital case," the parties had arrived at a "resolution", i.e., Zimmer would plead guilty to an amended charge of first-degree involuntary manslaughter, would agree to the maximum sentence of ten years to be served consecutively to the sentence imposed in Zimmer I, and would also agree to waive his right of appeal with respect to the sentence. The prosecutor further stated that, "for Mr. Zimmer's understanding, had this case gone to trial, the state would have prosecuted him as an aider and abettor to crimes committed byThomas Siller and/or Jason Smith." (Emphasis added.)
 {¶ 13} Defense counsel agreed with the prosecutor's assessment, stating that "the plea would be supported by the facts of this case, including Mr. *Page 7 
Zimmer's own statement." Thus, defense counsel believed the plea was "entered into by Mr. Zimmer with full knowledge, with full intelligence, and is voluntary * * *."
 {¶ 14} The trial court thereupon fully complied with Crim. R. 11(C)(2) by conducting a careful colloquy with Zimmer before accepting his plea. Finally, in accordance with the plea agreement, the court sentenced Zimmer to a term of ten years, to be served consecutively to the term imposed in Zimmer I.
 {¶ 15} On January 6, 2007, Zimmer decided to seek withdrawal of his guilty plea.[3] Zimmer argued that his plea was "based upon the same facts" as those presented in Zimmer I, but "newly discovered evidence" demonstrated that a state's "expert witness, Joseph Serowik, either deliberately or through gross negligence failed to disclose exculpatory evidence and testified untruthfully" at both the original trial and co-defendant Siller's trial. Zimmer intimated the state may have known that Serowik was an unreliable witness, and yet failed to provide this evidence to the defense as required by Brady v. Maryland (1963), 373 U.S. 83.
 {¶ 16} Zimmer supported his argument with allusions to not only his trial in Zimmer I, but also to his co-defendant's trial on the indictment in this case. *Page 8 
Zimmer, however, never requested that the records of either Zimmer Ior Siller's trial be incorporated by reference into the file of the instant case. Moreover, although Zimmer claimed that certain exhibits he attached to his motion supported his argument, he failed to attach those exhibits.
 {¶ 17} The only exhibit provided was attached to a "supplemental filing," and purported to be a "supplemental" affidavit of "forensic serologist" Edward Blake. Without Blake's "prior affidavit" for guidance, however, his averments had no point of reference, and, therefore, presented no support for Zimmer's claim that a state's witness had either "withheld exculpatory evidence" or "testified untruthfully" in any previous court proceeding.
 {¶ 18} The state filed a brief in opposition to any withdrawal of Zimmer's plea. Subsequently, Zimmer filed a reply brief, to which he attached another affidavit. Timothy Palmbach, "director of the Forensic Sciences Program at the University of New Haven," averred, at the outset, that he "would like the opportunity to * * * examine Jason Smith's bloodstained pants," but, based upon the items provided by counsel which he already had reviewed, Smith must have been very close to the victim "at the time of the beating."
 {¶ 19} On December 4, 2007, the trial court denied Zimmer's motion to withdraw his plea. The trial court additionally issued an opinion explaining its decision, indicating that the "record of the plea indicates no denial of Mr. *Page 9 
Zimmer's due process rights," that additional DNA evidence would not subtract from the evidence of guilt, and that Zimmer's experts failed to establish any manifest miscarriage of justice occurred.
 {¶ 20} Zimmer appeals from the trial court's decision, presenting the following four assignments of error.
 "I. The lower court abused its discretion in denying Zimmer's motion under Criminal Rule 32.1's manifest injustice standard.
 "II. The lower court abused its discretion in failing to allow Zimmer to withdraw his guilty plea despite new evidence of his actual innocence rendered [sic] his plea manifestly injustice [sic].
 "III. The trial court abused its discretion in denying Zimmer an evidentiary hearing.
 "IV. The trial court abused its discretion in failing to address Zimmer's Brady claim."
 {¶ 21} Zimmer argues that, in view of the evidence he supplied, the trial court's decision to deny his motions to withdraw his plea in the underlying case without a hearing constitutes an abuse of discretion. He asserts that since the record suggests his plea resulted from the threat of either tainted or perjured evidence, he may actually have been innocent, and the trial court could not have *Page 10 
concluded under the circumstances that his plea was knowingly, intelligently or voluntarily made. This court disagrees.
 {¶ 22} A motion to withdraw a guilty plea after the imposition of sentence may be granted by the trial court only to correct "manifest injustice." Crim. R. 32.1; State v. Xie (1992), 61 Ohio St.3d 521;State v. Smith (1977), 49 Ohio St.2d 261; State v. Peterseim (1980), 68 Ohio App.2d 102. In turn, this court's review of the trial court's decision on the motion is limited to the issue of whether the trial court abused its discretion. State v. Bayles, Cuyahoga App. No. 85910,2005-Ohio-6233. The record of this case fails to demonstrate either an abuse of discretion or a manifest miscarriage of justice.
 {¶ 23} Zimmer cannot now claim his innocence, because "a counseled plea of guilty to a charge removes the issue of factual guilt from the case." State v. Stumph (1987), 32 Ohio St.3d 95, 104-105; State v.Woodley, Cuyahoga App. No. 83104, 2005-Ohio-4810, ¶ 12. Additionally, although Zimmer claims he submitted evidence to suggest "manifest injustice," the record demonstrates, instead, a dearth of evidence to support his claims; whether out of inadvertence or otherwise, the materials he relied upon were not attached to his motion. Under these circumstances, Zimmer could not demonstrate the state committed anyBrady violation. *Page 11 
 {¶ 24} The trial court's decision to deny the motion without a hearing also is granted deference. State v. Atkinson, Cuyahoga App. No. 85773,2005-Ohio-5348. This especially attends in a case in which the trial court reviewed the original plea hearing, and, thus, was familiar with the facts of the case, and evidentiary materials to support an argument that the plea should be permitted to be withdrawn were lacking. In fact, since Zimmer never even requested an oral hearing on his motion, the trial court can hardly be faulted for failing to conduct one. State v.Jackson-Washington, Cuyahoga App. Nos. 90459 and 90648, 2008-Ohio-3815.
 {¶ 25} For the foregoing reasons, the trial court did not err in failing to grant Zimmer's motion to withdraw his guilty plea.
 {¶ 26} Zimmer's assignments of error, accordingly, are overruled.
 {¶ 27} The trial court's order is affirmed.
 It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 12 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] The docket reflects that Zimmer never filed a motion to withdraw his guilty plea. After the state filed a "response," Zimmer apparently realized his error, since he later filed a motion in the trial court in which: 1) he acknowledged he "inadvertently improperly filed" the actual motion to withdraw his guilty plea under another case number; 2) submitted a "copy" to the trial court; and, 3) requested his motion to withdraw his guilty plea be filed "nunc pro tunc to the date of * * * January 26, 2007." The trial court never ruled on this request. Nevertheless, for purposes of simplicity, this opinion will refer to the ultimate decision, as did the trial court, as one which denied Zimmer's motion to withdraw his guilty plea.
[2] See State v. Siller, Cuyahoga App. No. 80219, 2003-Ohio-1948.
[3] See footnote 1. Zimmer eventually filed a copy of his motion in the trial court on July 6, 2007. This copy contained no page "5." *Page 1