DECISION.
{¶ 1} Plaintiff-appellant, Gilbert R. Russell, in a single assignment of error appeals the trial court's grant of summary judgment in favor of defendant-appellee, Heritage Mutual Insurance Company ("Heritage"), by an entry journalized on October 31, 2003. Russell had filed a partial motion for summary judgment limited to liability against Heritage, which later filed its own cross-motion for summary judgment.
 {¶ 2} Russell had filed suit against Heritage and Joseph B. Jones because of an accident that had occurred on May 23, 2000. While driving his personal pickup truck, Russell was hit by an auto driven by Jones. In his complaint, Russell claimed negligence by Jones for failure to, among other things, maintain control of his auto. Because Russell's damages exceeded Jones's liability insurance coverage, Russell also filed a declaratory-judgment claim against Heritage, asserting that he was entitled to underinsured-motorist coverage ("UIM") under a Heritage commercial auto policy numbered GA-E40571. Heritage had also issued to Russell a commercial property policy numbered CP-E40571. We note that the Heritage commercial auto policy in the record was issued to a Gilbert Russell but listed the address where Russell's business, an auto body shop, was located.
 {¶ 3} The record shows that Jones was dismissed from the action by an entry journalized on December 5, 2002, subsequent to a settlement. Among stipulations agreed to by Russell was that his Heritage commercial auto policy was identified as representing "garage liability insurance" and other coverage totaling $500,000, and that he had received $37,500 from his State Farm policy and had executed a release of all claims against State Farm. Russell's State Farm policy covered his pickup truck involved in the accident and included uninsured and underinsured ("UM/UIM") coverage limited to $50,000. At the time of the accident, Russell was transporting a customer from a junkyard where they had been viewing autos with the intent that the customer would ultimately purchase one and then have Russell perform the necessary bodywork.
 {¶ 4} On appeal from the grant of summary judgment in favor of Heritage, Russell argues first that the Heritage commercial auto policy was an "automobile liability or motor vehicle liability policy of insurance" within the meaning of R.C.3937.18(A) and (L). Russell next argues that he was operating his personal auto within the scope and course of his garage business when he was injured and was thus entitled to UM/UIM coverage by operation of law. Russell received UM/UIM coverage from his State Farm policy. He now asserts that Heritage should have provided the same by operation of law. Heritage is adamant that Russell "did not request it [sic] pay for it, and it is not statutorily required to be offered."
 {¶ 5} Pursuant to Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[1] The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[2] This court reviews the granting of summary judgment de novo.[3]
 {¶ 6} For the purpose of determining the scope of coverage for an underinsured-motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.[4] In addition, when an insurance policy is clear and unambiguous, its interpretation is governed solely by the terms appearing in it, and a court cannot alter its provisions. But where an insurance policy is ambiguous, the ambiguity must be construed against the insurer and resolved in favor of the insured.[5] An insurance policy is ambiguous if its terms are subject to more than one reasonable interpretation.[6]
 {¶ 7} In Russell's motion for summary judgment, he contended that, "at the time of the accident, Plaintiff was operating a vehicle that he personally owned," and that "[a]lthough Plaintiff was driving an auto other than a covered auto, he [Russell] was still covered under the liability coverage of the policy." A copy of the Heritage commercial auto policy attached to Russell's motion showed that the policy contained three categories of coverage; liability, garagekeepers' comprehensive, and collision. The policy read, "Each of these coverages applies only to thoseautos shown as covered autos by the entry of one or more of the symbols from the Covered Autos section of the Garage Coverage Form next to the name of the coverage. Entry of symbols next to Liability provides coverage for Garage Operations."
 {¶ 8} The liability coverage showed only the symbol 29, and the garagekeepers' comprehensive and collision coverages both showed only the symbol 30. The liability coverage was set forth in these terms: "SECTION II — LIABILITY COVERAGE A. COVERAGE Garage Operations — Other Than Covered Autos [.] We will pay all sums an insured legally must pay as damages because of bodilyinjury or property damage to which this insurance applies caused by an accident and resulting from garage operations
other than the ownership, maintenance or use of covered autos. We have the right and duty to defend any insured against a suit
asking for these damages. However, we have no duty to defend anyinsured against a suit seeking damages for bodily injury orproperty damage to which this insurance does not apply." Concerning who was an insured, the policy read, "SECTION II — LIABILITY COVERAGE A. COVERAGE 1. Who Is An Insured * * * b. The following are insureds for garage operations other than covered autos: (1) You. (2) Your partners * * *."
 {¶ 9} With respect to the definition of symbols, the policy listed the symbols by the numbers 21 through 31: 21 meant any auto; 22 meant owned autos only; 23 meant owned private passenger autos only; 24 meant owned autos other than private passenger autos only; 25 meant owned autos subject to no-fault; 26 meant owned autos subject to a compulsory uninsured motorists law; 27 meant specifically described autos; 28 meant hired autos only; 29 meant nonowned autos used in the garage business; 30 meant autos left for service, repair, storage or safekeeping; and 31 meant dealer autos and autos held for sale by nondealer or trailer dealers.
 {¶ 10} Symbol 29 provided, "Any auto you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations. This includes autos owned by your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households while used in your garage business."
 {¶ 11} First, the nature of a policy is determined by the type of coverage provided, not by the label affixed by the insurer.[7] With a history of frequent revisions, the version of R.C. 3937.18 applicable in this case was the one amended by H.B. No. 261, effective September 3, 1997, and S.B. No. 57, effective November 2, 1999. With the enactment of H.B. 261, R.C. 3937.18 included a definition for an "automobile liability or motor vehicle liability policy of insurance" that significantly narrowed the scope of policies that had to include uninsured and underinsured-motorist coverage from that prevailing under the Ohio Supreme Court's interpretation of the previous version of the statute.[8] Pursuant to R.C. 3937.18, Heritage was required to offer UM/UIM coverage only if the policy in question was an automobile or motor vehicle liability policy. R.C. 3937.18(L) defined an automobile liability or motor vehicle liability policy of insurance as either of the following: "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance; (2) Any umbrella liability policy of insurance * * *." Proof of financial responsibility, as defined in R.C. 4509.01(K), meant "proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle[.]" Thus, to be considered an automobile liability or motor vehicle liability insurance policy, a policy had to serve as proof of financial responsibility for owners or operators of the motor vehicles specifically identified in the policy.[9] Much confusion has attended the application of the liability definitions in coverage disputes such as this one. Here, for example, there is an affidavit in which Russell stated that a Heritage senior claims representative acknowledged to Russell's counsel that UM/UIM coverage would be provided under the policy numbered GA-E40571. There is even a copy of a letter dated November 8, 2000 in which the claims representative stated, "We agree that as a result of the Pontzer [sic] case, we would provide UIM coverage under the policy."
 {¶ 12} According to our review of the Heritage policy, there were no motor vehicles specifically identified in the policy to meet R.C. 3937.18(L)'s requirement for UM/UIM coverage. Moreover, in the absence of specifically identified automobiles, we cannot agree that the symbol 29 definition could be substituted as a specific automobile identification. While we can find no case exactly on point, we find persuasive a Ninth Appellate District decision that held that the phrase "not owned by or rented or loaned to you or the insured" had not specifically identified a vehicle.[10] Also, in a decision by the Fifth Appellate District, it agreed with the trial court when it held that even though an insurance policy was captioned a commercial auto policy, since it lacked a scheduled list of covered vehicles and contained only coverage for "hired" and "non-owned" vehicles, this was not sufficient to transform it into an automobile liability or motor vehicle liability policy pursuant to R.C.3937.18.[11]
 {¶ 13} In this case, we note as well that the Heritage policy could not serve as proof of financial responsibility for "owners or operators of the motor vehicles specifically identified in the policy" when the policy did not specifically identify any motor vehicles.[12] Consequently, the policy was not one that "serve[d] as proof of financial responsibility * * * for owners or operators of the motor vehicles specifically identified in the policy of insurance" and, thus, could not be an automobile liability or motor vehicle liability insurance policy.
 {¶ 14} The purpose of R.C. 3937.18(L) is only to differentiate policies of insurance that are subject to Ohio's uninsured-motorist statutes from those that are not. We emphasize that if a liability policy does not qualify as a motor vehicle liability policy for purposes of Ohio's uninsured-motorist statute, this in no way invalidates the defined liability coverage provided thereunder.[13]
 {¶ 15} In this case, we hold that the trial court did not err in concluding that the Heritage policy was not an automobile or motor vehicle liability policy of insurance within the meaning of R.C. 3937.18, and that UM/UIM coverage did not arise by operation of law. Thus, we overrule Russell's single assignment of error.
 {¶ 16} Accordingly, the judgment of the trial court is affirmed. Judgment affirmed.
Gorman and Sundermann, JJ., concur.
[1] See Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267; State ex rel. Howard v. Ferreri,70 Ohio St.3d 587, 589, 1994-Ohio-130, 639 N.E.2d 1189.
[2] See Dresher v. Burt, 75 Ohio St.3d 280, 292,1996-Ohio-107, 662 N.E.2d 264.
[3] See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[4] See Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281, 289, 695 N.E.2d 732.
[5] See King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.
[6] See Hacker v. Dickman, 75 Ohio St.3d 118, 119-120,1996-Ohio-98, 661 N.E.2d 1005.
[7] See Selander v. Erie Ins. Group, 85 Ohio St.3d 541, 546,1999-Ohio-287, 709 N.E.2d 1161.
[8] See Jump v. Nationwide Mut. Ins. Co., 2nd Dist. No. 18880, 2001-Ohio-1699, appeal not allowed (2002),94 Ohio St.3d 1491, 763 N.E.2d 1188.
[9] See Uzhca v. Derham, 2nd Dist. No. 19106, 2002-Ohio-1814.
[10] See Gilcreast-Hill v. Ohio Farmers Ins. Co., 9th Dist. No. 20983, 2002-Ohio-4524; see, also, Acree v. CNA. Ins. Co.,
1st Dist. No. C-020710, 2003-Ohio-3043, at ¶ 19 (because a commercial general liability policy did not amount to an automobile liability policy, there was no UM/UIM coverage requirement under the policy).
[11] See Bowles v. Utica Natl. Ins. Group, 5th Dist No. 02CA68, 2003-Ohio-254, at ¶ 23.
[12] See Gilcreast-Hill, supra.
[13] See Refitt v. State Auto. Mut. Ins. Co., 3rd Dist. No. 1-02-38, 2002-Ohio-4885, appeal denied, 98 Ohio St.3d 1424,2003-Ohio-259, 782 N.E.2d 78.