OPINION
{¶ 1} Defendants-appellants, Eddie L. Moncrief and Leanne Felix-Moncrief ("appellants"), appeal from the judgment of the Franklin County Municipal Court, which entered judgment in favor of plaintiffs-appellees, Leader Insurance Company ("Leader") and Suzan M. Badawi ("Badawi") (collectively "appellees"). The court awarded to Leader the amount of $4,767.48, with interest, and to Badawi, the amount of $1,250, with interest. For the following reasons, we affirm.
 {¶ 2} On August 30, 2004, appellees filed a complaint against appellants. The complaint alleged that Badawi had suffered damages and injury as a result of an auto accident involving a motor vehicle driven by Mr. Moncrief. Appellees sought damages in the amount of $5,017.48.
 {¶ 3} Service upon appellants was attempted by certified mail, return receipt requested, at 1210 Summit Street in Columbus. Service failed, however, because the mailing to that address was returned.
 {¶ 4} Service upon appellants was then attempted by certified mail, return receipt requested, at 918 South Ohio Avenue in Columbus. Service at that address was successful; appellants each received the respective mailings at that address and the signed receipts were returned to the court.
 {¶ 5} On January 5, 2005, appellees moved for default judgment against appellants for their failure to plead or otherwise defend against the complaint. The court denied default judgment, stating that appellants, who were not represented by counsel, had responded on January 3, 2005.
 {¶ 6} On January 28, 2005, the court issued notice of a pre-trial and sent the notice to appellants at 918 South Ohio Avenue. The pre-trial was set for 9:00 a.m. on March 2, 2005.
 {¶ 7} On March 3, 2005, the court issued notice of a trial and sent the notice to appellants at 918 South Ohio Avenue. The trial was set for 9:00 a.m. on April 6, 2005.
 {¶ 8} Leader thereafter moved to continue the April 6, 2005 trial date. The court granted the continuance and set a new trial date of June 16, 2005, at 9:00 a.m. On April 9, 2005, the court sent notice of the new trial date to appellants at 918 South Ohio Avenue. The delivery of that notice was unsuccessful, however. The returned mailing provided an address of 1352 South Ohio Avenue for Mr. Moncrief and an address of 2143 Balford Square East for Ms. Felix-Moncrief.
 {¶ 9} The parties exchanged requests for admissions and documents. On June 16, 2005, appellants filed a copy of their requests. They identified their address as 918 South Ohio Avenue.
 {¶ 10} On June 16, 2005, the court issued notice of a trial scheduled for September 28, 2005, at 9:00 a.m. The court sent the notice to Mr. Moncrief at 1352 South Ohio Avenue and to Ms. Felix-Moncrief at 2143 Balford Square East.
 {¶ 11} On September 19, 2005, appellants filed a counterclaim against appellees, and they identified their address as 918 South Ohio Avenue. The counterclaim sought damages against appellees for "malicious injury, * * * loss of time at work defending civil suit, emotional duress, penalties — such as loss of driving privileges, and falsification[.]" Appellants sought damages in the amount of $1,500. The court subsequently dismissed appellants' counterclaim.
 {¶ 12} On September 22, 2005, the court sent notice of trial scheduled for September 28, 2005, at 9:00 a.m. The court sent the notice to appellants at 918 South Ohio Avenue.
 {¶ 13} Our record does not include a transcript of what occurred on September 28, 2005. However, the parties have indicated, and the court later confirmed, that the parties appeared before the court on September 28, 2005, but that the court could not proceed with trial on that date and continued the trial until October 14, 2005. The parties disagree on whether the court told them the time the trial would begin. The court stated, and appellees' counsel agrees, that the court scheduled the trial to begin at 8:00 a.m. Appellants deny being advised of an 8:00 a.m. start time.
 {¶ 14} On September 29, 2005, the court issued notice of trial scheduled for October 14, 2005, at 9:00 a.m. The court sent the notice to appellants at 918 South Ohio Avenue.
 {¶ 15} On October 4, 2005, the court issued an entry denying appellants' counterclaim. The entry identified 918 South Ohio Avenue as appellants' address. That mailing, with a postmark date of October 6, 2005, and a post office processing date of October 13, 2005, was returned to the court.
 {¶ 16} On October 4, 2005, appellants filed another counterclaim. They identified their address as 2143 Balford Square East.
 {¶ 17} On October 7, 2005, the court issued notice of trial scheduled for October 14, 2005, at 8:00 a.m. The court sent out four notices, as follows: (1) notice of an 8:00 a.m. trial on October 14, 2005, was mailed to Mr. Moncrief at 2143 Balford Square East. There is a handwritten note ("Notice also Hand mailed") on the record copy of the notice; (2) notice of an 8:00 a.m. trial on October 14, 2005, was mailed to Ms. Felix-Moncrief at 2143 Balford Square East. There is a handwritten note ("Notice also Hand mailed") on the record copy of the notice; (3) notice of an 8:00 a.m. trial on October 14, 2005, was sent to appellees' counsel. That notice stated: "NOTE: THIS IS A REVISED NOTICE. DISREGARD ANY PREVIOUS NOTICE." That notice also includes a handwritten fax number; and (4) notice of a 9:00 a.m. trial on October 14, 2005, was mailed to Ms. Felix-Moncrief at 1352 South Ohio Avenue. The notice mailed to Ms. Felix-Moncrief at 1352 South Ohio Avenue was returned to the court, undelivered.
 {¶ 18} On October 14, 2005, the matter came before the court. Appellees' counsel appeared, but appellants did not appear. The transcript reflects the following:
THE COURT: Just for the record, this case was set back on Wednesday * * *
* * *
THE COURT: * * * September 28th. At that time, the parties faithfully and patiently waited while we tried another civil case until about close to 1:00. There were two problems at that point. I had a mental health docket of about 60 people in the courtroom, and [appellees' counsel] had — it was like Circleville or somewhere he needed to be at 2:00, so we really couldn't try the case.
First, we were going to try to do it a day or two later, but the defendant said, "No. I can't take off work," so we then said this morning, the 14th of October, and we said 8:00. It's now 8:30, and the defendants have failed to appear. The Court is going to slowly start in case they wander in, but we can kind of get rolling.
* * *
THE COURT [to appellees' counsel]: Why don't you give me a summary, kind of an opening statement. I know you don't have to do a whole lot. I know it's an accident, but that will burn a minute or two of time."
(Tr. at 4-5.)
 {¶ 19} Following appellees' counsel's opening statement, the court stated: "The Court is going to go ahead and start with the testimony. They are not here. I don't know what else to do." (Tr. at 6.)
 {¶ 20} Badawi was called as a witness. She testified that a car driven by Mr. Moncrief hit her car from behind, just after she had changed lanes at the Main Street exit in Columbus while traveling south on I-71. She stated that she had her turn signal on, and she was not using a cell phone at the time. Appellees introduced photographs, which Badawi identified as showing damage to her car.
 {¶ 21} Badawi stated that the two cars immediately pulled over. She stated that a woman and small child were in the car with Mr. Moncrief. Mr. Moncrief told Badawi that he could not wait for the police to arrive. They exchanged information, and Mr. Moncrief left the scene.
 {¶ 22} Badawi then called the police, and the police and an ambulance arrived. Badawi was taken to a hospital. She stated that her back, neck, and shoulders were injured in the accident. At the hospital, Badawi was given pain medication. She subsequently saw a doctor and "went through therapy." (Tr. at 16.) Her therapy lasted a couple of months. She testified that she still suffers from pain.
 {¶ 23} Badawi testified that the cost to repair her car was $517.48. She incurred a deductible cost of $250; her insurance paid the remaining $267.48. Appellees submitted supporting exhibits. Appellees also submitted evidence of medical costs in the amount of $4,500. Badawi's doctor also indicated that she would need more therapy in the future. Costs for that future therapy would total $750.
 {¶ 24} The court asked whether Badawi was asking to recover those future costs and whether appellees "were amending to conform with that testimony in that exhibit to ask for an additional thousand on top of that or not." (Tr. at 23.) Appellees' counsel thereafter moved "to add an additional thousand dollars to the demand of the plaintiff." (Tr. at 23.)
 {¶ 25} Appellees moved to dismiss the second counterclaim filed by appellants. Following that discussion, the court stated:
THE COURT: * * * I'll note for the record again, they were told 8:00, and note they were given notices that day by hand and notices were sent out for today at 8:00 a.m. I've been taking testimony now for about 35 minutes, and it's now 9:00, and they still haven't appeared.
(Tr. at 25-26.)
 {¶ 26} The court admitted appellees' exhibits into evidence, and appellees rested. The court then stated:
* * * No use hearing argument because there's no side to argue against. Court obviously has viewed the witness. Her demeanor is appropriate, her testimony matches the exhibits that were presented to the Court. The standard jury instructions that I'm supposed to use as the factfinder, I have gone through those and weighed the credibility of this witness * * *.
(Tr. at 26-27.) The court then found for appellees and awarded $4,767.48 to Leader and $1,250 to Badawi, plus statutory interest.
 {¶ 27} The transcript reflects a court recess and then the following:
THE COURT: Back on the record on Leaders Insurance Company versus Eddie Moncrief, et al. Again, notice says — In reviewing the file and making a record, the Moncriefs were told that * * * the time was 8:00. Our assignment coordinator sent out notices on September 29th for 9:00, but then she was told of her mistake, and new notices were sent out and mailed on the 7th of October, which is a week ago; kind of hard to believe that one side got them and the other side didn't for 8:00.
As the record already shows, the Court already took testimony from 8:30 to 9:05. Mr. Moncrief showed up at ten after nine. Ms. Moncrief showed up at 9:25.
(Tr. at 28.)
 {¶ 28} The court then summarized for appellants Badawi's testimony. Badawi returned to the witness stand, and both Mr. Moncrief and Ms. Felix-Moncrief cross-examined Badawi at length. Appellees' counsel then called Mr. Moncrief as a witness. Counsel's questioning of Mr. Moncrief focused on the statements Mr. Moncrief provided to the police. According to Mr. Moncrief, the police officer did not believe his first statement, and he wrote a second statement under duress. In his first statement, according to Mr. Moncrief, he stated that his wife was with him in the car at the time of the accident. Because the officer did not believe him and instructed him to write a new statement, he wrote a second statement, in which he stated that his sister was in the car with him. He also testified to driver's license bureau confusion between him and his identical twin brother, who has a long criminal record.
 {¶ 29} The court then allowed Mr. Moncrief to tell the court "what your side of the story is." (Tr. at 50.) Mr. Moncrief did so, without interruption. In his view, Badawi cut in front of him and had minimal damage to her car. He got out and asked her if she was okay. He suggested that she call the police immediately, but she refused. They both got into their cars, and both drove away without the police or an ambulance arriving on the scene. The court questioned Mr. Moncrief about his statements to police, and specifically why the police would care whether it was Mr. Moncrief's wife or sister in the car. Mr. Moncrief stated that he meant to write "wife," but wrote "sister" by mistake. (Tr. at 53.) Ms. Felix-Moncrief also questioned Mr. Moncrief.
 {¶ 30} Appellees' counsel called Ms. Felix-Moncrief as a witness and asked a few questions. The court then allowed Ms. Felix-Moncrief to "tell me your part of the story right now if you want." (Tr. at 57.) Ms. Felix-Moncrief gave her version of the accident, and her story was consistent with Mr. Moncrief's story — Mr. Moncrief "barely tapped" Badawi's vehicle, the three of them got out of their vehicles, the Moncriefs asked Badawi to call the police, but she refused, and both cars left the scene together. (Tr. at 57.) Upon questioning from the court, Ms. Felix-Moncrief surmised that Badawi left the scene of the accident, but then returned to the scene later to call the police. Ms. Felix-Moncrief also alleged that Badawi was not seriously hurt.
 {¶ 31} Following questioning by Mr. Moncrief and appellees' counsel, the court allowed Ms. Felix-Moncrief to give further testimony. Ms. Felix-Moncrief submitted and explained exhibits to the court. Throughout this testimony, the court repeatedly asked if she had anything further to add or if she had other exhibits to submit. Following even more questioning by Mr. Moncrief and appellees' counsel, Ms. Felix-Moncrief gave more testimony.
 {¶ 32} In questioning Mr. Moncrief, the court suggested that perhaps Mr. Moncrief stated that his sister was in the car because he only had a temporary driver's license, which requires a licensed driver to be in the car. His wife, Ms. Felix-Moncrief, does not have a driver's license.
 {¶ 33} Following an extended dialogue between the court and Ms. Felix-Moncrief concerning exhibits, the court gave appellants the opportunity to present argument concerning their counterclaim. Ms. Felix-Moncrief asserted that they had been subject to abuse of process and malicious prosecution. Mr. Moncrief essentially re-argued his version of what occurred on the day of the accident. He also stated: "I understand that, you know, I was in the wrong from the things, that it was for driving. I know I was in the wrong for that, but still, yet, if it wasn't for Ms. Badawi's mistake, it would have never happened." (Tr. at 72.)
 {¶ 34} The court then found in favor of appellees: for Leader in the amount of $4,767.48; for Badawi in the amount of $1,250. As to Mr. Moncrief's statements to police, the court stated:
* * * It does not help Mr. Moncrief's credibility when he lies in his statement, and it's very clear to the Court — Yes, lied in his statement — he had a temporary permit to drive a car. He should have had a driver in the car with a license. He did not. But when you start lying to the police, it questions the credibility of that witness in total.
(Tr. at 74.)
 {¶ 35} Appellants filed a timely notice of appeal and raise the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
INSUFFICIENT SERVICE OF PROCESS * * *.
ASSIGNMENT OF ERROR NO. 2
IRREGULARITY IN PROCEEDINGS AND [APPELLEES] HAD EX-PARTE HEARING WITH [TRIAL COURT] AT 8:00 A.M. * * *
ASSIGNMENT OF ERROR NO. 3
BIAS AS PRO SE LITIGANTS. * * *
ASSIGNMENT OF ERROR NO. 4
[APPELLEES] DID NOT COMPLY WITH COURT ORDERS TO SUPPLEMENT RESPONSES AND PRODUCE ESTIMATES, PHOTOGRAPHS, AND LEASORSHIP BY [BADAWI], AND TO ALSO, SUPPLEMENT RESPONSES. * * *
ASSIGNMENT OF ERROR NO. 5
[APPELLEES] HAVE COMMITTED FRAUD UPON THE COURT. * * *
ASSIGNMENT OF ERROR NO. 6
* * * [BADAWI'S] CONTRIBUTORY NEGLIGENCE WAS OVERLOOKED * * *.
ASSIGNMENT OF ERROR NO. 7
* * * [BADAWI] PERJURED TESTIMONY AND HER CONDUCT HAS BEEN CONTRADICTORY TO HER CLAIMS. * * *
 {¶ 36} In their first assignment of error, appellants assert that they were not properly served with notice of the October 14, 2005 hearing. We disagree.
 {¶ 37} We begin with the principle that due process requires "`notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" OhioValley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn. (1986),28 Ohio St.3d 118, 124-125, quoting Mullane v. Central HanoverBank Trust Co. (1950), 339 U.S. 306, 314, accord Thomas v.Thomas, Franklin App. No. 03AP-1106, 2004-Ohio-2136, at ¶ 13. Ohio courts have also held that, while some form of notice of a trial date is required to satisfy due process, an entry of the trial date on the court's docket constitutes reasonable, constructive notice of the trial date. Ohio Valley at 124.
 {¶ 38} The case before us does not fit neatly within those cases concerning notice of a trial date, as the court advised appellants that the trial would occur on October 14, 2005, but then gave appellants confusing notices about the time of the hearing. Plainly, notice of a hearing must include notice of the time of the hearing in order to be adequate. Thus, our analysis here focuses on two questions: whether the court gave appellants notice reasonably calculated to apprise them of the time of the hearing; and whether that notice was timely.
 {¶ 39} The record in this case clearly illustrates the court's difficulty in apprising appellants of anything. Between service of the complaint in October 2004, and the trial in October 2005, appellants had four different addresses and appeared to be moving among them. While appellants used at least two of these addresses in their pro se filings with the court, the record contains no evidence that appellants ever notified the court of a change of address. "[T]he clerk is not charged with the duty of perusing the record to ensure that a party's mailing address has not changed." Robb v. Smallwood,165 Ohio App.3d 385, 2005-Ohio-5863, at ¶ 11. Rather, a party bears the burden of notifying the court formally of a change of address, and appellants did not do so here.
 {¶ 40} Despite not having a duty to do so, it appears that the clerk attempted to keep up with appellants' address changes. The clerk sent the October 7, 2005 notice, which apprised appellants of the 8:00 a.m. hearing on October 14, 2005, to two different addresses: the Balford Square address, which appellants used in their filing on October 4, 2005; and the 1352 South Ohio Avenue address, which the court successfully used when it issued a notice to Mr. Moncrief on June 16, 2005. The clerk's use of these addresses was reasonable, particularly since appellants had never notified the court formally of their change from the 918 South Ohio Avenue address.
 {¶ 41} The more difficult question, however, is the timeliness of the court's corrected notice. Appellees assert, and the trial court also stated, that appellants received notice of the 8:00 a.m. start time at the hearing on September 28, 2005. While the court may well have informed appellants of the 8:00 a.m. start time on September 28, 2005, the court issued what appellants could reasonably have concluded was a revised notice on September 29, 2005. The September 29, 2005 notice advised appellants that the October 14, 2005 trial would begin at 9:00 a.m. While appellees assert that appellants should have called the court to confirm the start time, we cannot fault a party for relying on an official notice issued by the court. Nevertheless, our inquiry does not end there.
 {¶ 42} The record indicates that the court entered the 8:00 a.m. start time on its docket and issued the corrected notice on October 7, 2005. Appellants allege that they did not receive the October 7 notice until October 15, 2005, a day after the trial. On appeal, appellants presented copies of the October 7 notice and note that the envelope has a postmark date of October 13, 2005, one day prior to trial. We find, however, that we "cannot add matter to the record that was not part of the trial court's proceeding and then decide the appeal based on the new matter."In the Matter of Perez, Franklin App. No. 04AP-126,2004-Ohio-5068. The postmarked letters were not part of the trial court's record, and we may not consider them here.
 {¶ 43} On the record before us, we must conclude that the court issued timely notice of the October 14, 2005 trial, including the 8:00 a.m. start time, to appellants. At the very least, the court gave constructive notice to appellants of the 8:00 a.m. start time when it posted the correct date and time on the court docket on October 7, 2005. Further, and perhaps more importantly, we determine below that, even if the notice was inadequate, appellants' late arrival did not prejudice them unfairly. Therefore, we overrule appellants' first assignment of error.
 {¶ 44} In their second assignment of error, appellants allege that the court held irregular and ex parte proceedings. We note, again, the principles we cited above: due process requires not only reasonable notice, but also an opportunity to be heard. As we detailed above, the court began to hear evidence at 8:30 a.m., in appellants' absence. We note further, however, the lengths to which the court went to afford appellants an opportunity to cross-examine Badawi, present their own version of what occurred on the day of the accident, and submit their own exhibits, once they did appear. The transcript does not reflect a summary dismissal of appellants' evidence, as appellants' brief suggests. Rather, the transcript reflects a comprehensive and often repetitive presentation of evidence by both sides.
 {¶ 45} Nevertheless, appellants assert that they were prejudiced because they did not have the opportunity to respond to appellees' motion to amend their complaint to incorporate Badawi's future damages. We agree with appellants that they did not receive formal notice of appellees' oral motion to amend. However, they did have an opportunity to respond to appellees' claim for future damages. Upon appellants' arrival, the court advised them that Badawi "testified that she still has some shoulder and neck pain to this date. The Plaintiffs' Exhibit No. 5 talks about future need for therapy in the range of 750 to a thousand dollars." (Tr. at 29.) Ms. Felix-Moncrief, in particular, presented testimony and exhibits to rebut Badawi's claim that she was injured.
 {¶ 46} We find, too, that appellants' claims of prejudice based on their inability to hear Badawi's testimony firsthand a bit overreaching in light of the fact that Mr. Moncrief did not arrive until 9:10 a.m., and Ms. Felix-Moncrief did not arrive until 9:25 a.m. Even if the court had waited until 9:00 a.m. to proceed, Mr. Moncrief would have missed about half of Badawi's testimony, and Ms. Felix-Moncrief might have missed it altogether.
 {¶ 47} In the end, based on our review of the entire record, we find that the court's proceedings offered appellants a reasonable opportunity to be heard and to present their objections to appellees' case against them. While it would have been preferable to avoid the confusion about the 8:00 a.m. start time, appellants' late arrival did not change the outcome of the proceeding. From the beginning, the court sought to minimize any prejudice to appellants. Upon appellants' arrival, the court advised them of Badawi's testimony and evidence and allowed them both to cross-examine Badawi, present their own version of what occurred on the day of the accident, and submit exhibits. The court repeatedly asked appellants if they had any further questions, testimony or exhibits. After giving appellants every opportunity to present their case, the court entered a ruling supported by the evidence. Therefore, we overrule appellants' second assignment of error.
 {¶ 48} In their third assignment of error, appellants assert that they suffered bias because they are pro se litigants. While appellants point to the lack of timely notice, we find no indication that the notices to appellants were different because they are pro se litigants.
 {¶ 49} Appellants assert that the failure to join a necessary party, Badawi's mother, who owned the car involved in the accident, exposes them to additional liability. We find that this question is not properly before us, as appellants waived this alleged error by not timely raising it before the trial court. Civ.R. 12(G). However, even if we were to agree with appellants that a necessary party was lacking, appellants have shown no connection between this issue and their status as pro se litigants, nor have they shown any prejudice.
 {¶ 50} Appellants make additional allegations of bias based on the court's rulings on credibility and the weight of the evidence. We find no evidence to support appellants' claims, which essentially assert that the court's ultimate decision was wrong.
 {¶ 51} For all of these reasons, we overrule appellants' third assignment of error.
 {¶ 52} In their fourth assignment of error, appellants assert that appellees did not comply with court orders to supplement responses and produce evidence and that they engaged in avoidance tactics. The record indicates that appellants propounded requests for admissions and documents upon appellees. Appellees moved to strike appellants' requests, and the court overruled appellees' motion. On August 5, 2005, appellees filed notice of their responses to appellants' requests. Thereafter, appellants filed numerous requests for supplementation of appellees' responses. On September 8, 2005, appellees filed a response to appellants' request for supplementation. In that response, appellees' counsel indicated that he had given appellants all of the responsive information he had in his possession.
 {¶ 53} Here, appellants argue that they were prejudiced by appellees' introduction of new evidence prior to their arrival on October 14, 2005. We find, however, that the court specifically identified each of appellees' exhibits and gave appellants an opportunity to address this evidence; appellants did so. Therefore, we overrule appellants' fourth assignment of error.
 {¶ 54} In their fifth assignment of error, appellants assert that appellees have committed fraud upon the court. Specifically, appellants allege that the Columbus Police Department pictures of Badawi's car are different from Leader's pictures of the damage. Upon review of the evidence presented, we find no indication of fraud. Rather, appellants made their assertions concerning the strength of appellees' evidence to the trial court, and the court ruled in favor of appellees. We overrule appellants' fifth assignment of error.
 {¶ 55} In their sixth assignment of error, appellants assert that the trial court overlooked Badawi's contributory negligence. To support their assertion, appellants direct our attention to the following statements by the court at the end of the hearing:
One, yes, you have the argument that she pulled in front of you and that could have caused the accident. You kind of argued that, you kind of didn't. An attorney would have argued it stronger for you.
(Tr. at 73.)
 {¶ 56} We find, however, that both appellants testified that Badawi cut in front of them and essentially caused the accident. While the court stated that an attorney would have made a stronger argument, the court did not suggest that an attorney would have made a successful argument for contributory negligence. In any event, "[i]t is well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel." Sabouri v. Ohio Dept.of Job Family Serv. (2001), 145 Ohio App.3d 651, 654. We must presume, then, that appellants have knowledge of the law relating to contributory negligence and could have argued that point more strenuously, if they so chose. And, in the end, despite appellants' evidence that Badawi cut in front of their vehicle, the court still found by a preponderance of the evidence that Mr. Moncrief hit the back of Badawi's vehicle and caused her injuries. Therefore, we overrule appellants' sixth assignment of error.
 {¶ 57} In their seventh assignment of error, appellants assert that Badawi gave perjured testimony and that her conduct has been contradictory to her claims. We note, first, that, in making these assertions, appellants seek to introduce new evidence concerning the accident. As we noted above, however, we cannot and will not consider evidence outside the court record.
 {¶ 58} As to appellants' remaining arguments, we find that, in essence, appellants simply take issue with Badawi's testimony. We find, however, that appellants pointed out inconsistencies and contradictions within Badawi's testimony to the trial court. In the end, the court chose to believe Badawi. "The trial court enjoys a `large measure of discretion to determine the sufficiency of the evidence, the credibility of the witnesses and the weight to be given to the testimony.'" First Bank ofMarietta v. Roslovic Partners, Inc. (2000),138 Ohio App.3d 533, 538, quoting Buckles v. Buckles (1988),46 Ohio App.3d 102, 116. We find no abuse of the trial court's discretion here. Therefore, we overrule appellants' seventh assignment of error.
 {¶ 59} In conclusion, we overrule appellants' first, second, third, fourth, fifth, sixth, and seventh assignments of error. Therefore, we affirm the decision of the Franklin County Municipal Court.
Judgment affirmed.
Klatt, P.J., and Travis, J., concur.