OPINION
{¶ 1} In case No. 07AP-225, defendant-appellant, Ernest O. Thorpe ("Thorpe"), appeals from the judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, Dawn Yoder ("Yoder"), on Yoder's claim for negligence, arising out of an automobile accident. In case No. 07AP-302, Yoder appeals from the Franklin County Court of Common Pleas' entry of summary judgment in favor of defendant-appellee, Nationwide Mutual Insurance Company ("Nationwide"), on Yoder's claim for a declaratory judgment regarding her entitlement to uninsured motorist ("UM") benefits for damages resulting from the same automobile accident. On May 4, 2007, this court sua sponte consolidated these appeals for purposes of record filing, briefing, and oral argument.
 {¶ 2} On February 2, 2002, Yoder was employed as a police officer with the Columbus Police Department and was a passenger in a police cruiser, owned by the city of Columbus. While the cruiser was stopped on North High Street with its emergency lights activated, a motor vehicle driven by Thorpe, an uninsured driver, collided with the cruiser. Yoder, who contends that Thorpe failed to obey a red traffic light immediately before colliding with the cruiser, was injured as a result of the collision.
 {¶ 3} Yoder made a claim for UM benefits under a Nationwide insurance policy issued to Yoder and her husband, but Nationwide denied the claim. *Page 3 
 {¶ 4} On January 30, 2004, Yoder filed a complaint in the Franklin County Court of Common Pleas, alleging a claim of negligence against Thorpe and a claim for a declaratory judgment regarding her entitlement to UM coverage against Nationwide. Thorpe, who is incarcerated, filed a pro se answer to Yoder's complaint, along with counterclaims for negligence and excessive force, on February 24, 2004. Nationwide filed an answer to Yoder's complaint and a cross-claim for subrogation, contribution, and indemnity against Thorpe on March 3, 2004.[1] Yoder filed a reply to Thorpe's counterclaim on March 9, 2004.
 {¶ 5} On October 12, 2004, Nationwide filed a motion for summary judgment on Yoder's declaratory judgment claim, arguing that a policy exclusion precluded Yoder's recovery of UM benefits. The parties fully briefed the motion for summary judgment, and, on May 18, 2005, the trial court granted Nationwide's motion. Although Yoder filed a notice of appeal from the trial court's entry of summary judgment in favor of Nationwide on June 10, 2005, this court dismissed Yoder's appeal for lack of a final, appealable order. See Yoder v. Thorpe, Franklin App. No. 05AP-605, 2005-Ohio-6882.
 {¶ 6} After the dismissal of Yoder's first appeal, the trial court reactivated the case as to Thorpe and referred the matter to a magistrate for a jury-waived trial, scheduled for January 31, 2007, on Yoder's negligence claim. Thorpe did not appear on the scheduled trial date, but the magistrate proceeded with trial, and Yoder presented her case. The magistrate issued a decision, containing findings of fact and conclusions of law, on February 28, 2007. The magistrate determined that Yoder was entitled to a judgment against Thorpe in the amount of $301,950.36. On March 14, *Page 4 
2007, the trial court filed a final judgment entry, in accordance with the magistrate's decision. Both Thorpe and Yoder filed timely notices of appeal from the trial court's final order.
 {¶ 7} In his appeal from the entry of judgment against him, Thorpe presents four assignments of error:
 FIRST ASSIGNMENT OF ERROR
 Trial court error held court without notice of trial to DEFENDANT AND without DEFENDANT present or being represented.
 SECOND ASSIGNMENT OF ERROR
 Trial court error in decision weight of evidence, insuffience [sic] evidence should have rule in DEFENDANT favor.
 THIRD ASSIGNMENT OF ERROR
 [Trial] court error allowing PLAINTIFF to testify unconte[s]ted.
 FOURTH ASSIGNMENT OF ERROR
 [Trial] court error in decision of DEFENDANT being [negligent] in the accident and ran a signal light on FEB. 2, 2002.
 {¶ 8} Yoder's appeal relates to the trial court's entry of summary judgment in favor of Nationwide on Yoder's declaratory judgment claim. Yoder presents two assignments of error for our review:
 ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION IN GRANTING DEFENDANT-APPELLEE NATIONWIDE'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT IT WRONGFULLY FAILED TO CONSIDER EXHIBITS AND EVIDENCE, THE DECISION IS NOT SUPPORTED BY THE *Page 5 
RECORD IN VIOLATION OF A PERSON'S RIGHT TO TRIAL BY JURY, RULE 56 OF THE OHIO RULES OF CIVIL PROCEDURE, THE DUE PROCESS CLAUSES OF THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR NO. II
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION IN GRANTING DEFENDANT-APPELLEE NATIONWIDE'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT THE EVIDENCE AND INFERENCES TO BE DRAWN THEREFROM CREATED AN ISSUE OF MATERIAL FACT FOR THE JURY TO DECIDE.
 {¶ 9} We begin by addressing Thorpe's appeal. In his first assignment of error, Thorpe contends that the trial court erred by conducting a trial in his absence because he did not receive notice of the trial date. In his third assignment of error, Thorpe asserts that the trial court erred by permitting Yoder to testify in Thorpe's absence. In response to Thorpe's first and third assignments of error, Yoder argues that Thorpe was duly notified of the trial date, but failed to request transport from prison to attend the proceedings, and that the trial court neither erred in conducting the ex parte trial nor in permitting Yoder to testify uncontradicted. We address these assignments of error together.
 {¶ 10} The Supreme Court of Ohio has recognized that "[t]here is no Ohio statute or rule which specifically requires a court of the general division of common pleas to give notice of the setting down of a date for trial." Ohio Valley Radiology Assoc, Inc. v. Ohio Valley Hosp.Assn. (1986), 28 Ohio St.3d 118, 123. Moreover, "Ohio courts have traditionally held that while some form of notice of a trial date is required to satisfy due process, an entry of the date of trial on the court's docket constitutes reasonable, *Page 6 
constructive notice of that fact." Id. at 124. In Ohio ValleyRadiology, the Supreme Court held that, because the plaintiffs received no other type of notice of the trial date, "they were at least entitled to the constructive notice that comes from the court's setting down the trial date upon its docket." Id. There, because the trial court did not provide even constructive notice of the trial date by setting it on the docket, the court's entry of judgment after a trial in the plaintiffs' absence violated the due process provisions of the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. Id. at 125.
 {¶ 11} As a general rule, "once a person becomes a party to an action, he has a duty to check on the proceedings of the court to assure that he will be at the hearings or trial." Ketchum v. Hoffman (May 26, 1994), Franklin App. No. 93APE09-1270, citing Ries Flooring Co., Inc. v. DilenoConstr. Co. (1977), 53 Ohio App.2d 255; Metcalf v. Ohio State Univ.Hosp. (1981), 2 Ohio App.3d 166. In Ketchum, quoting Ries FlooringCo., this court stated that "`parties are not normally entitled to notice of a hearing other than the setting of the case on the docket.'" There, we found that the trial court's original case schedule afforded the defendant reasonable notice of the trial date despite the fact that the court improperly mailed subsequent "courtesy" notices to the defendant's former counsel.
 {¶ 12} More recently, in Leader Ins. Co. v. Moncrief, Franklin App. No. 05AP-1289, 2006-Ohio-4232, this court addressed the requirement that parties receive reasonable notice of the date and time of trial. InMoncrief, the trial court undisputedly notified the parties of the trial date, but then gave conflicting notices about the scheduled start time for trial. Despite the issuance of some notices stating that trial *Page 7 
would start at 8:00 a.m. and some notices stating that trial would start at 9:00 a.m., the record indicated that the trial court entered the 8:00 a.m. start time on its docket and issued corrected notices, clarifying the correct 8:00 a.m. start time, one week prior to trial. Although the defendants alleged that they did not receive the corrected notice until after trial, this court found that the court issued timely notice of the 8:00 a.m. start time. We held that, "[a]t the very least, the court gave constructive notice * * * of the 8:00 a.m. start time when it posted the correct date and time on the court docket." Id. at ¶ 43.
 {¶ 13} Although decided prior to Ohio Valley Radiology, our opinion inMetcalf also remains instructive. In Metcalf, the plaintiff-appellant argued, in part, that the trial court erred by dismissing his case with prejudice after neither he nor his attorney appeared for trial. The record did not indicate that the plaintiff or his attorney were given notice of trial, either in accordance with a court rule providing for notice by publication or by notice mailed to the attorney's correct address. Nevertheless, we noted that "it is the duty of a party, once he has been made a party to an action, to keep himself advised of the progress of the case and of the dates of hearings, including the date of trial, and that there is no duty upon the court or its clerk to notify a party of the date set for trial." Id. at 167. We also discussed RiesFlooring Co., in which the Eighth District Court of Appeals held that notice by newspaper publication was insufficient to satisfy due process in the absence of any entry on the court's docket. Addressing RiesFlooring Co., we stated:
 Actually, the [Eighth District] * * * approved a form of the general rule we set out in Holland v. Amer [(Nov. 29, 1979), Franklin App. No. 79AP-106], saying, in effect, that where there is no rule of court providing for other notice, due process is satisfied where the trial court sets a case down on its docket for hearing, since the parties or their attorneys are *Page 8 
expected to keep themselves advised of the progress of their cases. * * *
Metcalf, at 168. While the record in Metcalf did not establish whether or not the trial court entered the trial date on its docket, we held that the "[p]laintiff must demonstrate that the trial date was not entered upon the trial docket, and that he therefore had no means of keeping himself advised of the trial date, if he is to show a due process violation; otherwise, we must presume that the proceedings below were regular." Metcalf at 169, citing Ostrander v. Parker-FallisInsulation Co., Inc. (1972), 29 Ohio St.2d 72.
 {¶ 14} Here, Yoder argues that Thorpe had actual notice of the trial date, based on a December 4, 2006 trial notice mailed to Thorpe. While the docket does indicate that the clerk of courts mailed notices of the January 31, 2007 trial date to the parties or their counsel on December 4, 2006, the notice addressed to Thorpe was returned on December 7, 2006, for an insufficient address.[2] Therefore, the notice did not provide Thorpe actual notice of the scheduled trial date.
 {¶ 15} Nevertheless, we cannot say that Thorpe otherwise lacked actual notice of the trial date. The trial court's order of reference, setting the January 31, 2007 trial before a magistrate, indicates that the court mailed a copy of that order to Thorpe. While it is unclear to what address the court mailed Thorpe's copy of the order of reference, Thorpe's prison address was readily discernable both from the docket and from the parties' filings, and the record contains no indication that the order of reference *Page 9 
was returned to the court as undeliverable. Thus, the record does not demonstrate that Thorpe lacked actual notice of the trial date.
 {¶ 16} Even if Thorpe did not receive the order of reference notifying him of the January 31, 2007 trial, he had sufficient constructive notice of the trial date by virtue of the court's entry of the trial date on its docket. The record reflects that the trial court first entered the January 31, 2007 trial date on its docket through the order of reference, filed August 11, 2006. The trial date again appears on the docket when the clerk issued and mailed notices thereof on December 4, 2006. Thus, the January 31, 2007 trial date was discernable from the court's docket for approximately five months prior to trial. Pursuant toOhio Valley Radiology, we find that the trial court docket provided Thorpe with reasonable, constructive notice of the trial date.
 {¶ 17} Because Thorpe had constructive notice of the trial date, he must rebut the presumption that constructive notice was sufficient to place him on notice of the pending trial date in order to demonstrate a due process violation. See Zashin, Rich, Sutula Monastra Co., L.P.A.v. Offenberg (1993), 90 Ohio App.3d 436, 444, fn. 1. Thorpe fails to rebut the presumption that constructive notice was sufficient to place him on notice of the trial date; he points to no evidence in the record demonstrating that he did not receive notice of the trial date and relies, instead, on bare, unsupported allegations in his appellate brief. This court may not consider such allegations, unsupported by evidentiary materials. Id. at 444, citing State v. Ishmail (1978),54 Ohio St.2d 402; Mancino v. City of Lakewood (1987), 36 Ohio App.3d 219. Accordingly, we find that the trial court's proceedings on January 31, 2007, in Thorpe's absence, did not violate Thorpe's right to due process of law and were not in error. Furthermore, we find *Page 10 
no error in the trial court permitting Yoder to testify at trial. Therefore, we overrule Thorpe's first and third assignments of error.
 {¶ 18} Thorpe's remaining assignments of error challenge the trial court's judgment based on the testimony adduced at trial. In his second assignment of error, Thorpe contends that the trial court's decision was based on insufficient evidence and was against the manifest weight of the evidence, and, in his fourth assignment of error, Thorpe contends that the trial court erred in finding that he ran a red traffic light and was, thus, negligent.
 {¶ 19} Resolution of Thorpe's remaining assignments of error requires a review of the evidence presented at trial, but Thorpe has not filed a transcript of the trial or a statement of the evidence, pursuant to App.R. 9(C), in support of his assignments of error. The duty to provide a transcript for appellate review falls upon the appellant because the appellant bears the burden of showing error by reference to matters in the record. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Id. In the absence of a transcript, or any alternative form of the record permitted by App.R. 9, we are unable to meaningfully review a claim that the trial court's judgment was not supported by sufficient evidence or was against the manifest weight of the evidence. See In re Guardianship of Guzay, Franklin App. No. 02AP-745, 2003-Ohio-5036; Collier v. Stubbins, Franklin App. No. 03AP-553, 2004-Ohio-2819. By failing to file a transcript or alternative form of record, Thorpe has failed *Page 11 
to meet his burden of showing error by reference to matters in the record. Accordingly, we overrule Thorpe's second and fourth assignments of error.
 {¶ 20} Having overruled each of Thorpe's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas in favor of Yoder and against Thorpe on Yoder's negligence claim.
 {¶ 21} We now turn our attention to Yoder's appeal from the summary judgment entered in favor of Nationwide on Yoder's claim for a declaratory judgment regarding her entitlement to UM coverage. In granting summary judgment, the trial court concluded that a "regular use exclusion" in the Nationwide policy, which excluded UM coverage for bodily injuries sustained while occupying a motor vehicle available for the regular use of an insured, but not listed in the policy's liability coverage, precluded Yoder's recovery of UM benefits. Accordingly, the trial court determined that Nationwide was entitled to judgment as a matter of law. Because both of Yoder's assignments of error concern the appropriateness of the trial court's entry of summary judgment, we address them together.
 {¶ 22} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. *Page 12 
 {¶ 23} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 24} To determine the validity of the Nationwide policy's regular use exclusion, we must first determine which version of Ohio's often-amended UM statute, R.C. 3937.18, applies to the policy. It is well-settled that, for determining the scope of UM coverage, the statutory law in effect at the time of entering into an insurance policy controls the rights and duties of the parties. Ross v. Farmers Ins.Group of Cos., 82 Ohio St.3d 281, syllabus, 1998-Ohio-381.
 {¶ 25} Nationwide originally issued the policy at issue to Yoder's husband, Jim, for a policy period beginning June 5, 1996.[3] Pursuant to R.C. 3937.31(A), every automobile insurance policy issued in Ohio must be issued for a policy period of not less than two years or be guaranteed renewable for successive policy periods totaling not less than two years. The commencement of each two-year guarantee period brings into *Page 13 
existence a new contract of insurance, whether the policy is categorized as a new policy or a renewal. Wolfe v. Wolfe, 88 Ohio St.3d 246, 250,2000-Ohio-322. The statutory law in effect as of the issuance date of each new policy governs the policy. Id. "Under Wolfe, insurance policies could * * * not be altered during the guaranteed two-year period `except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39.'" Arn v. McLean, 159 Ohio App.3d 662, 2005-Ohio-654, at ¶ 15, quoting Wolfe at paragraph one of the syllabus. Consequently, an insurer could incorporate statutory changes into an insurance policy only when a new two-year guarantee period began. Wolfe at 250-251.
 {¶ 26} In Wolfe, the Supreme Court of Ohio looked to an insurance policy's original issuance date and counted successive two-year periods from that date to determine the last guarantee period and the controlling version of R.C. 3937.18. Applying that method here, and counting successive two-year periods from the original policy commencement date of June 5, 1996, the last two-year guarantee period prior to Yoder's accident began on June 5, 2000. Thus, the statutory law in effect on that date, including the statutory changes affected by H.B. No. 261, effective September 3, 1997, and S.B. No. 57, effective November 2, 1999, governs the scope of the Nationwide policy.
 {¶ 27} H.B. No. 261, which amended R.C. 3937.18, added subsections (J) and (K) to the UM statute. The amended statute, as applicable here, provides, in part, as follows:
 (J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for *Page 14 
bodily injury or death suffered by an insured under any of the following circumstances:
 (1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, * * * if the motor vehicle is not specifically identified in the policy under which a claim is made * * *[.]
 * * *
 (K) As used in this section, "uninsured motor vehicle" and "underinsured motor vehicle" do not include any of the following motor vehicles:
 * * *
 (2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured[.]
S.B. No. 57 did not affect the above-quoted sections, which remained applicable. Having determined the statutory law applicable to the Nationwide policy, we turn our attention to the policy itself.
 {¶ 28} The Nationwide policy that took effect on June 5, 2000, the beginning of the relevant two-year guarantee period, contained the following exclusion to UM coverage:
 This coverage does not apply to:
 * * *
 3. Bodily injury suffered while occupying a motor vehicle:
 a) owned by;
 b) furnished to; or
 c) available for the regular use of; *Page 15 you or a relative, but not insured for Auto Liability coverage under this policy. * * *
The Nationwide policy for the policy period from December 5, 2001 to June 5, 2002, the final six months within the applicable two-year guarantee period, contains a similar exclusion.[4] That policy contains the following exclusionary language:
 A. This coverage does not apply to anyone for bodily injury or derivative claims:
 * * *
 3. While any insured operates or occupies a motor vehicle:
 a) owned by;
 b) furnished to; or
 c) available for the regular use of;
 you or a relative, but not insured for Auto Liability coverage under this policy. * * *
Despite slight differences, the exclusions both purport to exclude coverage for bodily injury sustained while an insured is operating or occupying a motor vehicle, not insured for liability under the policy, that is owned by the insured, furnished to the insured, or available for the insured's regular use.[5] Thus, regardless of whether Nationwide validly incorporated the changes from the June 5, 2000 policy into the December 5, 2001 policy, in the midst of a two-year guarantee period, a regular use exclusion was part of the Nationwide policy since the commencement of the guarantee period. *Page 16 
 {¶ 29} Yoder argues that the regular use exclusion is unenforceable because it is contrary to the coverage mandated by R.C. 3937.18 and against public policy. Yoder also argues that the exclusion is susceptible to different interpretations and must, therefore, be construed strictly against Nationwide and liberally in favor of Yoder. Yoder further argues that genuine issues of material fact regarding the parties' intent and the incorporation of the exclusion into the policy precluded summary judgment and required a jury trial on her declaratory judgment claim. For the following reasons, we reject each of Yoder's arguments.
 {¶ 30} We first address Yoder's arguments that the regular use exclusion is contrary to the coverage mandated by R.C. 3937.18(A).
 {¶ 31} The Supreme Court of Ohio has stated that "the validity of an insurance policy exclusion of uninsured coverage depends on whether it conforms to R.C. 3937.18." Martin v. Midwestern Group Ins. Co.,70 Ohio St.3d 478, 480, 1994-Ohio-407; Moore v. State Auto. Mut. Ins. Co.,88 Ohio St.3d 27, 28-29, 2000-Ohio-264, citing Sexton v. State Farm Mut.Auto. Ins. Co. (1982), 69 Ohio St.2d 431, 433, and Martin. InMartin, under a pre-H.B. No. 261 version of R.C. 3937.18, the Supreme Court held that UM insurance must provide coverage "`for bodily injury * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.'" Id. at 482, quoting R.C. 3937.18(A)(1). The pre-H.B. No. 261 version of R.C. 3937.18 mandated coverage if: "(1) the claimant is an insured under a policy which provides [UM] coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law." Id. at 481, citing State Farm Auto. Ins. Co. v.Alexander (1992), 62 Ohio St.3d 397. Thus, in Martin, the *Page 17 
Supreme Court invalidated an other owned auto exclusion because the applicable version of R.C. 3937.18 "[did] not permit insurers to eliminate this required coverage on the basis that the injury was incurred in a vehicle not listed in the policy." Id. at 482.
 {¶ 32} Based on Martin, Yoder claims that she is entitled to UM coverage under the Nationwide policy because she, undisputedly, is a named insured, was injured by an uninsured motorist, and has a claim recognized by Ohio tort law. However, the Supreme Court's holding inMartin stemmed from the tenet that the validity of a UM exclusion depends on whether it conforms with R.C. 3937.18. AlthoughMartin held that an attempt to limit UM coverage was generally inconsistent with the intent and purpose of R.C. 3937.18 as it existed at that time, the General Assembly has since amended R.C. 3937.18
numerous times.
 {¶ 33} Martin was decided before the effective date of H.B. No. 261, which specifically authorized insurers to limit UM coverage under certain circumstances. McDaniel v. Westfield Cos., Franklin App. No. 03AP-441, 2003-Ohio-6662. Among the circumstances in which insurers may limit UM coverage are those where an insured suffers bodily injury while "operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, * * * if the motor vehicle is not specifically identified in the policy." R.C.3937.18(J)(1). Thus, the H.B. No. 261 amendments to R.C. 3937.18
effectively superseded the holding in Martin that a limitation of UM coverage was inconsistent with the intent and purpose of R.C. 3937.18, where post-H.B. No. 261 versions of that statute apply. SeeWestfield Ins. Co. v. Ellis, Trumbull App. No. 2003-T-0093,2004-Ohio-4393, at ¶ 8, fn. 3 ("Martin was superseded by amendments to then R.C. 3937.18[J] through HB 261, * * * which allowed an *Page 18 
insurance company to exclude insureds who were not occupying covered vehicles); Ellis v. Nationwide Ins. Co., Belmont App. No. 04 BE 7,2005-Ohio-1658, at ¶ 30 ("[t]he Ohio General Assembly passed H.B. 261, in part, so that insurance companies could exclude [UM] coverage for vehicles not listed in the policy"); Adams v. Crider, Mercer App. No. 10-02-18, 2004-Ohio-535, at ¶ 13.
 {¶ 34} This court has repeatedly accepted the validity and enforceability of other owned vehicle exclusions and/or regular use exclusions in policies governed by post-H.B. No. 261 versions of R.C.3937.18. See Burgess; Jackson v. State Auto. Mut. Ins. Co., Franklin App. No. 04AP-80, 2005-Ohio-586; Pyros v. Loparo, Franklin App. No. 03AP-1146, 2005-Ohio-577; Carmona v. Blankenship, Franklin App. No. 02AP-14, 2002-Ohio-5003 (holding that an other owned auto exclusion was valid under R.C. 3937.18[J][1], as amended by H.B. No. 261).
 {¶ 35} On facts nearly identical to this case, the Eighth District Court of Appeals found that a regular use exclusion precluded UM coverage. In Brill v. Progressive Ins. Co., Cuyahoga App. No. 84665,2005-Ohio-626, a police officer, while occupying a police cruiser, was injured in an automobile accident with an uninsured motorist and sought UM coverage under his personal automobile insurance policy. After the trial court granted summary judgment in favor of the insurance company, the plaintiff-officer appealed. The plaintiff's policy excluded coverage for bodily injury sustained "while operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of, you or a relative, other than a covered vehicle." Id. at ¶ 10. The Eighth District found that the regular use exclusion precluded the plaintiff's recovery of UM benefits. The record demonstrated that the police cruiser the plaintiff was operating at *Page 19 
the time of his accident was not a covered vehicle under the plaintiff's policy. Additionally, the court found that, where the plaintiff's regular job duties involved operating one of the several vehicles in the police district's fleet, the cruiser was a vehicle available for the plaintiff's regular use, even though the plaintiff ordinarily used another vehicle from the district's fleet. Accordingly, the court affirmed the trial court's entry of summary judgment in favor of the insurance company.
 {¶ 36} In support of her argument that the regular use exclusion in the Nationwide policy is invalid, Yoder cites this court's opinion inConley v. Nationwide Mut. Ins. Co. (Sept. 28, 1989), Franklin App. No. 89AP-537. While Yoder is correct that Conley involved a similar factual scenario, in that a police officer was involved in an accident with an uninsured or underinsured driver while the officer was driving a police vehicle, our finding of coverage in Conley was based on the fact that the policy therein did not contain a regular use exclusion within its UM coverage. Rather, the regular use exclusion appeared in an endorsement relating to liability coverage, and we found nothing in the policy to justify the conclusion, urged by the insurance company, that the exclusion also applied to UM coverage. Here, to the contrary, the Nationwide policy clearly contains a regular use exclusion within its provision of UM coverage. Accordingly, we find Conley readily distinguishable.
 {¶ 37} For the aforestated reasons, we reject Yoder's argument that the regular use exclusion in the Nationwide policy is contrary to the coverage mandated by R.C. 3937.18 and, thus, invalid.
 {¶ 38} Yoder next argues that enforcement of the regular use exclusion would violate public policy by thwarting the purpose of UM insurance to protect persons from *Page 20 
uninsured drivers because it does not effectively provide coverage to insured persons. Yoder contends that enforcement of the exclusion would produce unreasonable results, thereby violating the presumption set forth in R.C. 1.47 that, in enacting a statute, the General Assembly intended a just and reasonable result. Yoder's contention that enforcement of the regular use exclusion is against public policy and legislative intent is not persuasive. As stated above, the Nationwide policy complied with R.C. 3937.18, as amended by H.B. No. 261. We presume that such statute represented the General Assembly's public policy determinations and intent. Smith v. Guideone Ins., Franklin App. No. 02AP-1096, 2003-Ohio-4823, at ¶ 40; see, also, Atterholt v. AutoOwners Ins. Co., Richland App. No. 2005CA0073, 2006-Ohio-1576 (enforcing an other owned vehicle exclusion despite noting that Martin remains applicable to the extent that it holds that courts must effectuate the legislative intent). "`Where the General Assembly has spoken, and in so speaking violated no constitutional provision, the courts of this state must not contravene the legislature's expression of public policy.'"Smith at ¶ 40, quoting Van Sweden v. Goodyear Tire Rubber Co., Summit App. No. 20710, 2002-Ohio-2654, at ¶ 13. Thus, we reject Yoder's argument that enforcement of the regular use exclusion in the Nationwide policy violates the legislative intent and creates an unreasonable result.
 {¶ 39} Shifting from her arguments that the regular use exclusion is unenforceable because such exclusions contradict R.C. 3937.18 or violate public policy, Yoder next contends that the regular use exclusion is susceptible to different interpretations and, therefore, created a genuine issue of material fact, sufficient to defeat Nationwide's motion for summary judgment. Interpretation of an insurance policy *Page 21 
presents a question of law that an appellate court reviews de novo, without deference to the trial court. Blair v. Cincinnati Ins. Co.,163 Ohio App.3d 81, 2005-Ohio-4323, at ¶ 8, citing Nationwide Mut. Fire Ins.Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108, 1995-Ohio-214. When the policy language is clear and unambiguous, a court must enforce the policy as written, giving the words their plain and ordinary meaning.Cincinnati Indemn. Co. v. Martin, 85 Ohio St.3d 604, 607, 1999-Ohio-322, citing Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657, 665. If an exclusionary clause in an insurance policy has only one reasonable interpretation, a court is bound to enforce the clause accordingly. Burgess at ¶ 12. However, "`[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.'" Clark v. Scarpelli,91 Ohio St.3d 271, 282, 2001-Ohio-39, quoting King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus.
 {¶ 40} Yoder contends that the terms of the Nationwide policy are reasonably susceptible to more than one interpretation, yet she points to no ambiguity in the policy language itself. Rather, Yoder attempts to create ambiguity by arguing that she did not believe that the Nationwide policy contained a regular use exclusion that would preclude coverage for injuries she sustained while occupying a police cruiser. Yoder argues that she believed the Nationwide policy provided her with UM coverage while traveling in a police cruiser because she requested such coverage and because her insurance agent did not inform her that the policy excluded coverage in such a circumstance. Yoder's belief regarding the coverage afforded under the Nationwide policy does not create an ambiguity. See Hagberg v. Cincinnati Ins. Co., Franklin App. No. 06AP-618, 2007- *Page 22 
Ohio-2731, at ¶ 13 (rejecting a claim of ambiguity based not on the language of the insurance policy, but on the plaintiff's belief that she was entitled to coverage). Despite her bald assertions of ambiguity, the express terms of the Nationwide policy are not ambiguous. To the contrary, the regular use exclusion plainly and unambiguously excludes from UM coverage bodily injury sustained by an insured while occupying a non-scheduled vehicle available for the insured's regular use; it is not reasonably susceptible to different interpretations. Accordingly, we must apply the exclusion as written.
 {¶ 41} Separate from her argument that the regular use exclusion is ambiguous, Yoder contends that the exclusion was not properly incorporated into the Nationwide policy. Yoder asserts that her insurance agent, Willis Brown ("Brown"), failed to notify her of the existence of the exclusion in the policy and that Nationwide failed to notify her of the addition of such exclusion to her policy. In her appellate brief, Yoder states that she and her husband advised Brown that they required UM coverage while driving or occupying police cruisers and that Brown assured Yoder that the Nationwide policy afforded such coverage. In the trial court, in support of her memorandum contra Nationwide's motion for summary judgment, Yoder submitted her own affidavit and the affidavit of her mother-in-law, Phyllis Yoder, who worked for Brown, in an attempt to establish a genuine issue of material fact regarding the contracting parties' intent and their understanding of the coverage provided by the Nationwide policy. Yoder contends that the trial court erred by not considering the affidavits attached to her memorandum contra. *Page 23 
 {¶ 42} To the extent that Yoder relies on the affidavits as evidence of the meaning of the Nationwide policy, the trial court properly rejected the affidavits as parol evidence. In a contract action, parol evidence is admissible only if the terms of the contract are ambiguous and, then, only to interpret, but not to contradict, the express contractual language. Grange Life Ins. Co. v. Bics (Sept. 12, 2001), Lorain App. No. 01CA007807. Here, the language of the policy is unambiguous, and Yoder may not introduce parole evidence to contradict it. However, even upon consideration of such affidavits for the purpose of proving the parties' intent or understanding of the policy coverage, we find that Yoder fails to demonstrate the existence of a genuine issue of material fact.
 {¶ 43} Yoder's affidavit does not support the factual allegations she makes in her appellate brief. In her affidavit, Yoder states that, on or about November 9, 2001, she contracted for insurance with Nationwide, and the policy went into effect on December 5, 2001. In her brief, Yoder claims that she instructed Brown that she required UM coverage because her employer, the city of Columbus, did not provide automobile insurance coverage. However, Yoder's affidavit does not state that she informed Brown that she required such coverage to apply while she was operating or occupying a police cruiser. Similarly, in her brief, Yoder claims that Brown assured her that the Nationwide policy afforded such coverage, but her affidavit provides no evidence that Brown ever expressly stated that the Nationwide policy's UM coverage extended to Yoder's use of a police cruiser. Although Phyllis Yoder states that "everyone believed" that Yoder would have UM coverage while driving or riding in a police cruiser, she likewise makes no claim that Brown informed Yoder that such *Page 24 
coverage existed under the Nationwide policy. Phyllis Yoder states that Brown acknowledged the Yoders' need for greater UM coverage, yet it is undisputed that the renewal policy that went into effect on December 5, 2001, included increased limits of UM coverage to meet the Yoders' expressed need for increased coverage. Thus, we find that the evidentiary record before the trial court upon summary judgment contained no evidence that Brown misrepresented the contents of the Nationwide policy or represented that Yoder would be entitled to UM coverage for injuries sustained while operating a police cruiser.
 {¶ 44} In her appellate brief, Yoder also asserts that Brown did not advise her of the addition of the regular use exclusion to her policy and that she never agreed to any policy change that would limit her UM coverage. Nevertheless, Yoder points to no evidence that Nationwide, in fact, substantially changed her policy by adding the regular use exclusion to the December 5, 2001 policy after Yoder discussed her insurance needs with Brown. Rather, the undisputed evidence demonstrates that the regular use exclusion had been included in Yoder's policy since, at least, the beginning of the two-year guarantee period beginning June 5, 2000. The record contains no evidence that Yoder spoke with Brown regarding her UM coverage needs prior to November 2001, in anticipation of the policy renewal effective December 5, 2001, at which time the regular use exclusion had been part of the policy for nearly two years.
 {¶ 45} Yoder states in her affidavit that she reads her automobile insurance policy when it renews, yet she still claims that she was unaware of the unambiguous regular use exclusion contained in her policy's UM coverage. An insured has a duty to examine the coverage provided by her policy and is charged with knowledge of the *Page 25 
contents thereof. Fry v. Walters Peck Agency, Inc. (2001),141 Ohio App.3d 303, 310; MBE Collection, Inc. v. Westfield Cos., Inc., Cuyahoga App. No. 79585, 2002-Ohio-1789. Here, Yoder admits that she read her policy when it renewed, which the policy had done at least three times since the incorporation of the regular use exclusion. Thus, Yoder is charged with knowledge of the regular use exclusion contained in the Nationwide policy. Accordingly, we find no genuine issue of material fact regarding the incorporation of the regular use exclusion into Yoder's policy based either on the representations of Brown or on Nationwide's alleged failure to notify Yoder of the regular use exclusion contained in her policy.
 {¶ 46} Having determined that it is valid and enforceable, we conclude that the regular use exclusion in the Nationwide policy precludes coverage for Yoder's injuries. At the time of the accident, Yoder was undisputedly occupying a police cruiser as part of her regular duties as a patrol officer for the Columbus Police Department. Although Yoder argues that the police cruiser she occupied at the time of the accident was not the same police cruiser she normally used, that fact is irrelevant to the application of the regular use exclusion. InKenney v. Employers' Liability Assurance Corp. (1966), 5 Ohio St.2d 131, the Supreme Court of Ohio addressed this argument when it examined a regular use exclusion in an automobile insurance policy, as applied to a city police officer who sustained bodily injury while occupying a police cruiser. The court stated:
 In order to be excluded under this exclusionary clause, an automobile need not be a single particular automobile regularly furnished to the named insured. Thus it is well settled that an automobile will be excluded under such policy provisions although it is only one of a group of automobiles from which an automobile is regularly furnished to the named insured by his employer. * * * *Page 26 
Id. at 134. More recently, the Eighth District Court of Appeals relied on Kenney to enforce a regular use exclusion in a police officer's personal automobile liability policy, despite the officer's argument that the police car he was occupying at the time of his accident was not the police car that he and his partner ordinarily used. SeeBrill. In Brill, the court stated that the police car "was one of several zone cars available to him for his regular use as a police officer." Id. at ¶ 23. Accordingly, the court found that the insured was injured while operating a motor vehicle available for his regular use. For the reasons stated in Kenney and Brill, we likewise hold that the police cruiser Yoder was occupying was a motor vehicle available for her regular use at the time of the accident. Because Yoder bases her claim for UM benefits on injuries she sustained while occupying a motor vehicle available for her regular use, but a vehicle not insured for liability coverage under the Nationwide policy, the regular use exclusion precludes Yoder's recovery of UM benefits.
 {¶ 47} Yoder makes the additional arguments that the trial court's entry of summary judgment violated her right to a jury trial and the long-held tenet that court's should decide cases on their merits, not on pleading deficiencies. We reject those arguments. A properly granted motion for summary judgment does not violate a party's right to a trial by jury. Canady v. Fifth Third Bank, Franklin App. No. 04AP-1317,2005-Ohio-4924, at ¶ 22. Moreover, the trial court based its decision and entry granting Nationwide's motion for summary judgment not on pleading deficiencies, but on the merits of Yoder's claim for declaratory judgment. Generally, when a trial court grants summary judgment, it is a judgment on the merits. See Feurer v. Ohio HeartlandCommunity Action Comm., Marion App. No. 9-06-52, 2007-Ohio-2278, at ¶ 13. Here, *Page 27 
after resolving the legal question concerning interpretation of the Nationwide policy, the trial court concluded that Yoder was not entitled to recover UM benefits as a matter of law, thus determining her claim for declaratory judgment on the merits.
 {¶ 48} For these reasons, we overrule Yoder's assignments of error and affirm the Franklin County Court of Common Pleas' entry of summary judgment in favor of Nationwide.
Judgments affirmed.
KLATT and TYACK, JJ., concur.
[1] Nationwide voluntarily dismissed its cross-claim, pursuant to Civ.R. 41(A), on April 24, 2006.
[2] Although Thorpe's correct prison address appeared on the docket, the notice was addressed to:
EARNEST THORPE
NONE GIVEN
NONE GIVEN ZZ 99999
[3] Although it is unclear when Dawn Yoder was added to the Nationwide policy as a named insured, the renewal for the policy period beginning June 5, 2000, listed both Jim and Dawn Yoder as named insureds.
[4] The December 5, 2001 policy also included increased UM limits of $100,000 per person/$300,000 per accident, as compared to $12,500 per person/$25,000 per accident in the June 5, 2000 policy.
[5] Although this case specifically involves the "regular use" subsection of the exclusion, courts sometimes refer to exclusions such as this, generally, as "other owned auto" exclusions. See Burgess v.Erie Ins. Group, Franklin App. No. 06AP-896, 2007-Ohio-934, at ¶7-8. *Page 1